OPINION OF THE COURT
Anthony J. Ferraro, J.
Petitioners maintain this proceeding pursuant to CPLR article 78 for an order of this court reviewing, reversing and annulling a determination of the respondent Zoning Board of Appeals of the City of Mount Vernon which granted a variance to intervenor-respondents.
Intervenor-respondents sought leave to construct 30 single-story attached units on six acres of open land remaining on their parcel of 29.5 acres in order to provide housing for the elderly.
The parcel in question was purchased in 1865 to establish a home for orphans. An orphan farm school was built *1081 in 1866. In 1869 a charitable corporation was formed with power to purchase and hold real estate and to “establish, maintain, control, govern and manage any orphan house, farm school, industrial school, hospital, asylum, retreat or other institution necessary and proper for the carrying out of the general object of the said corporation”. In 1897 a home for the aged was constructed. Thereafter, intervenorrespondents, hereinafter referred to as “Wartburg”, established a three-level concept of elderly care consisting of residences providing minimal care, intermediate facilities providing detailed care and a nursing home to provide intensive care. The proposed construction contemplates a fourth level of elderly care in single-family attached units. In each unit the wall behind the bed will be fitted with lifesaving equipment and the wall opposite the bed will be equipped with a closed-circuit television camera. This arrangement will allow the administration of all needed care short of hospitalization without moving the patient and enable a healthy spouse to live with a sick partner. The attachment of the units enables the residents to be close to their neighbors yet independent and facilitates the rendering of care.
Petitioners contend on this application (1) that the respondent zoning board had no jurisdiction to grant a use variance allowing attached and semidetached residential units because semidetached units are prohibited in any zoning district, (2) that the proposed construction constitutes a “large scale planned unit development” which is within the exclusive jurisdiction of the city council, (3) that Wartburg failed to follow lawful procedure in processing its application, (4) that respondent zoning board failed to prepare its own findings of fact and conclusions of law, (5) that the findings and conclusions provide no basis for the relief granted, and (6) that respondent zoning board failed to comply with the requirements of the Environmental Conservation Law of the State of New York.
Although the parcel in question is located in a one-family residential zone, it had been used for the purpose of providing housing and schooling for orphans and housing and health care for the elderly prior to the enactment of the zoning ordinance. In furtherance of its corporate purposes, *1082 Wartburg has already constructed multistory buildings upon its property consisting of an orphanage, a home for the aged, cottages for the housing of orphans, a school, auditorium, administration building and a nursing home.
The rule is fundamental that nonconforming uses in existence when a zoning ordinance is enacted are constitutionally protected and must be permitted to continue notwithstanding any contrary provisions of a subsequently enacted zoning ordinance. (People v Miller, 304 NY 105.)
Likewise, and equally fundamental is the rule that nonconforming uses may not be extended or expanded and once abandoned are forever forfeited. (Matter of Off Shore Rest. Corp. v Linden, 30 NY2d 160.)
However, if the extension or expansion of the nonconforming use forms an integral part of the original part of the original contemplation for the entire parcel, then the right to such extension or expansion becomes vested from the inception and is likewise constitutionally protected. In Matter of Syracuse Aggregate Corp. v Weise (72 AD2d 254, affd 51 NY2d 279) the court allowed the owner to excavate his entire 25-acre parcel although only five acres had been excavated prior to passage of the prohibitory ordinance. The court stated (pp 257, 259-260) that the test for determining whether a nonconforming use may be extended depended on:
“ ‘[W]hether the nature of the incipient non-conforming use, in the light of the character and adaptability to such use of the entire parcel manifestly implies an appropriation of the entirety to such use prior to the adoption of the restrictive ordinance’ ”.
“Special Term erred in its application of the rule that nonconforming uses may not be expanded, implementing a blanket rule that no additional land, beyond that utilized as of the time the ordinance became effective, may ever be entitled to nonconforming usage.”
The Court of Appeals in affirming, by Jasen, J. (supra), concluded that where quarrying operations are conducted on a distinct parcel and the activities manifest a clear intent to appropriate the entire parcel for quarrying, the extent of protection afforded by the nonconforming use will *1083 extend to the entire parcel even though extensive excavation was limited to a small portion of the parcel.
Stating it in another way, Mr. Justice Gabrielli held in Matter of Dolemite Prods. v Kipers (39 Misc 2d 627, 633) that a nonconforming use can be extended:
“provided it can be shown that (1) it was an expansion of a nonconforming use on lands previously owned by the petitioner *** and that (2) it has always been the intent of the petitioner to develop and use the entire lands owned by it, for the questioned purposes and that this was or should have been known to all involved ***
“Although not every expansion or extension of certain operations will be permitted, the view has been taken that it is not essential that a nonconforming use exercised at the time a zoning ordinance is enacted should embrace an entire tract in order to entitle an owner to subsequently employ it all for the use. To so hold would deprive owners of the use of their property as effectively as if an ordinance was so drawn as to be completely prohibitive of all use. (8 McQuillin, Municipal Corporations [3d ed.], §25.208, p. 521; De Felice v. Zoning Bd. of Appeals, 130 Conn. 156; Village of Ossining v. Meredith, 190 Misc. 2d 142.)”
This principle authorizing expansion of nonconforming uses has been enunciated in the following reported cases among others: Town of Somers v Camarco (308 NY 537), where excavation of sandpit on two tracts was authorized as a constitutionally vested right before enactment of the ordinance; People v Perkins (282 NY 329), wherein a conviction for violation of a zoning ordinance, because defendant enlarged a business nonconforming use in a residential zone, was reversed; Matter of Fairmeadows Mobile Vil. v Shaw (16 AD2d 137), involving an expansion of a trailer park to other parts of petitioner’s lands; Telimar Homes v Miller (14 AD2d 586), allowing continued development on quarter-acre parcels after rezoning ordinance was amended to require half-acre parcels; Matter of Empire City Racing Assn. v City of Yonkers (132 Misc 816), wherein court upheld the right to construct nonconforming barns in a residential area in conjunction with the continued and expanded operation of a racetrack.
*1084 Additionally, the principle has been adopted in condemnation cases where the courts have valued entire parcels as per the nonconforming use although only a portion was actually being used as such. (St. Agnes Cemetery v State of New York, 3 NY2d 37; Matter of Port of N. Y. Auth., 2 NY2d 296; Marra v State of New York, 61 AD2d 38; Wholesale Coop. Meat Dealers Assn. v State of New York; 45 AD2d 14; Matter of County of Nassau [Cohen], 34 AD2d 412.)
Finally, the principle has been codified by text. (3 Rathkopf, Law of Zoning and Planning [4th ed], pp 60-3, 60-4.)
In the instant case an entire parcel consisting of 29.5 acres has been used from its inception to fulfill the corporate purposes of Wartburg. Its care of orphans and the elderly has been its landmark. The cottages and orphanage for children, the school, the administration building, the auditorium and the nursing home stand as monuments of its intent. There could not or should not have been any question that Wartburg intended to use this entire parcel for the care of orphans and the elderly. It would be ludicrous to assume that six and one-half acres of this unit parcel would be separated for the construction of private one-family homes or for any use not connected with its main operation.
Wartburg was pregnant with nonconformance when the zoning ordinance was enacted. The enactment of the zoning ordinance cannot abort the child. Wartburg has already given birth to a cottage-type living for orphans where 15 children live in one cottage with two parents. Next, Wartburg gave birth to a new concept of three-level care for the elderly cushioned to the need of each individual patient. Now Wartburg is about to deliver a new concept of fourth-level care for the elderly which preserves the family unit while still providing the individual care. Who can rightfully say that this mother of providence must be subjected to a tubal ligation?
The type of construction must be fashioned to the needs of the times. For in no other way can any expansion be meaningful or serve any valid purpose. Progress cannot be stymied by strictures of interpretation. Principles of law *1085 must be viewed in the light of changing times and not permitted to stagnate in stale waters. The type and extent of expansion to be permitted in the care of the elderly must be measured against the desirability and effectiveness of that care in our modern society. If the subsequently enacted zoning ordinance clashes with or restricts this concept, it abrogates and curbs constitutionally protected vested rights. More specifically, if the zoning ordinance seeks to prohibit semidetached units which are compatible with proper expansion of a nonconforming use, it infringes upon constitutional rights. The board of appeals serves as the “safety valve” to prevent such deprivation of property rights by the ordinance. Section 267-43-D (2) of the zoning ordinance specifically grants power to the board to grant extensions of nonconforming uses “as may be authorized after public hearing.”
Although it is implicit in the determination of the respondent zoning board that Wartburg has a vested right to expand its nonconforming use and to construct the 30 semidetached units for the continued care of the elderly pursuant to its manifest intent to use its entire parcel for such purposes, no specific finding to this effect has been made by the board.
Likewise, although it appears that the proposed construction does not constitute a “large scale planned unit development” within the meaning of the zoning ordinance, no finding is made either that it is not such a development or that it is granting the extension in any event because of vested constitutional rights antedating the ordinance.
If constitutional rights are acquired, the ordinance cannot prohibit the use nor relegate its authorization to another body (city council) and still remain constitutional. The “safety valve” preserves the constitutionality and it can neither be eliminated nor abdicated by diversion to another body.
Furthermore the determination of the board purports to grant a variance but makes no findings of practical difficulty or undue hardship. The zoning ordinance specifically states in section 267-55 that no variance shall be granted by the. board unless it finds “(a) that there are special *1086 circumstances or conditions, fully described in the findings of the Board: and (b) that for reasons fully set forth in the findings of the Board, the granting of the Variance is necessary”.
The court does not hold that the application must be treated as a variance pursuant to section 267-55-A of the zoning ordinance because the board has the authority to treat the application as an enlargement of a nonconforming use pursuant to section 267-43-D (2). However, if the board does treat it as a variance it must make the required findings.
This matter must therefore be remanded to the board for the purpose of making appropriate findings on the aforementioned issues.
Petitioners’ contention that lawful procedure was not followed because the notices to the property owners were inadequate, cannot be ^ sustained. The notice adequately advised the public and property owners of the nature of the application, to wit: “for permission to construct elderly housing consisting of thirty units, one story each”. The date and place of the hearing was clearly set forth and interested parties were advised that “all papers and documents on file, may be examined at the Office of the Zoning Board of Appeals, or the Office of the City Clerk at City Hall”. There is no specific requirement as to the contents of the notice. (General City Law, §81, subd 4; Zoning Ordinance of City of Mount Vernon, §267-53.) The purpose of the notice is to alert interested parties and afford them the opportunity to present their views to the zoning board. (Matter of Gerling v Board of Zoning Appeals of Town of Clay, 11 Misc 2d 84.) A notice should fairly be given the meaning it would reflect upon the mind of the ordinary layman and not as it would be construed by one familiar with the technicalities of the zoning ordinance. (Satin v Board of Stds. & Appeals of City of N. Y., 28 Misc 2d 931, affd 15 AD2d 531; Village of Larchmont v Sutton, 30 Misc 2d 245; Matter of Griest v Hooey, 205 Misc 396; Matter of Palmer v Mann, 206 App Div 484.) Stating whether the application involves an extension of a nonconforming or a use variance or an area variance or any combination thereof is confusing enough even to lawyers and Judges let *1087 alone the ordinary laymen. The vigorous opposition mounted upon this application bears vivid attestation to the adequacy of the notice.
Petitioners’ contention that the voting was invalid because the vice-chairman was not present at the hearing and based his vote on inaudible and incomplete tapes is untenable. Not only is the record transcribed from the tapes complete, but the vote of the vice-chairman was not required since four other votes necessary to validate the application were cast in favor thereof.
The objection that the findings are illegal because they were prepared by the applicants’ attorney cannot be sustained. Findings of fact and conclusions of law have been prepared by attorneys from time immemorable in equity, matrimonial and other legal matters. An acceptance of such findings and conclusions by the board made them the findings and conclusions of the board regardless of who prepared or proposed them.
There remains for consideration petitioners’ contention that the board failed to comply with the requirements of the Environmental Conservation Law of the State of New York. The Environmental Conservation regulations in defining residential uses explicitly excludes “nursing homes”. (6 NYCRR 617.2 [w].) The present application clearly involves a nursing home use as distinguished from a pure residential use. Nevertheless, the board fully considered the environmental impact of the proposed construction and properly found that there would be no adverse environmental effect thereby.
This matter is therefore remanded to the respondent zoning board of appeals for the making of appropriate findings consistent with this decision.