OPINION OF THE COURT
Wesley, J.
Respondents, constituting the Zoning Board of Appeals of the Village of Chestnut Ridge, appeal the decision annulling their denial of a use variance to petitioner Rudolph Steiner Fellowship Foundation. Both Supreme Court and the Appellate Division held that petitioner had a preexisting nonconforming use that could be extended because it formed an integral part of the original contemplated use of the entire parcel, under our holding in Matter of Syracuse Aggregate Corp. v Weise (51 NY2d 278). We hold today that petitioner’s use is not a nonconforming use that can be extended under Syracuse Aggregate, and we reverse.
I.
On August 27, 1963, prior to the incorporation of the Village of Chestnut Ridge, petitioner was granted a special permit by the Zoning Board of Appeals of the Town of Ramapo to operate *456 a home for the aged "with adjunct services and facilities” on its property in the Town of Ramapo. The property was located in a single-family residential zone, in which nursing and convalescent homes were allowed by special permit. A copy of the master plan for the property that allegedly accompanied the application for the special permit was not included in the record before Supreme Court.
Petitioner began operating an intergenerational community in 1966. The elderly members of that community often live in the same buildings with younger "co-workers” and their families. The Town of Ramapo issued building permits and certificates of occupancy for various buildings that house both elderly members and co-workers, at times requiring petitioner to obtain bulk variances, but never requiring petitioner to obtain use variances. Although respondents contend that the Town had been assured that the co-worker apartments did not constitute separate dwelling units because they did not have kitchens, respondents concede that the Town never required use variances for the co-worker apartments. Building 10, a barn that had been built prior to petitioner’s acquisition of the property, was renovated into a community activities center with a co-worker apartment in 1970, without obtaining any variances, site plan approval, building permit or certificate of occupancy.
In 1986, the Village of Chestnut Ridge, which includes petitioner’s property, was incorporated. Under a zoning ordinance adopted by the Village, petitioner’s property was located in a residential district in which nursing homes and convalescent facilities were allowed by special permit. Respondents took the position that residential dwelling units were not an accessory use with nursing homes or convalescent care facilities.
In 1990 and 1991, respondents required petitioner to obtain variances for many of its buildings which were in violation of the Village zoning ordinance. Petitioner initially requested a use variance for Building 10, but petitioner’s architect alleges that the Village Attorney informed him that no use variance was necessary for the co-worker apartment because that use was covered by petitioner’s special permit issued by the Town of Ramapo. In any event, petitioner amended its application and requested only variances from the bulk requirements of the zoning ordinance for Building 10, which were granted.
On May 21, 1992, the Chestnut Ridge Village Board granted a special permit for a nursing home / convalescent facility for *457 that portion of petitioner’s facility which had not received a special permit from the Town of Ramapo. The Board made findings of fact that respondents had granted variances to permit the uses requested by petitioner, that the use and the buildings on the property had been continued for many years, and that the granting of the special permit would not increase the size of the use.
In 1994, petitioner requested both area and use variances for proposed improvements to Building 10. Respondents granted the area variances to allow the entrance to be moved to the back of the building for safety and aesthetic reasons, and to allow a ramp to comply with the Americans With Disabilities Act. Respondents denied the request for a use variance to allow the construction of a second co-worker apartment in Building 10.
Thereafter, petitioner commenced a CPLR article 78 proceeding to annul respondents’ determination and to compel the issuance of a building permit. Petitioner contended that respondents’ determination was arbitrary and capricious, and that respondents lacked the authority to require a use variance because petitioner had a "vested right” to continue and to expand its nonconforming use.
Supreme Court granted the petition, annulled respondents’ determination, and remanded the matter to respondents. The court held that petitioner had a vested right to extend or to expand its nonconforming use under Matter of Syracuse Aggregate Corp. v Weise (72 AD2d 254, 257, affd 51 NY2d 278, supra). The court further held that respondents were estopped from requiring a use variance for the new co-worker apartment for Building 10 because petitioner had been allowed to develop its property with the understanding that co-worker apartments would be located throughout the community, and the addition of a second co-worker apartment in Building 10 would not be detrimental to public health, safety or welfare. The court did not address petitioner’s argument that the denial of the use variance was arbitrary and capricious.
The Appellate Division affirmed without reaching the estoppel issue or the argument that the denial of the use variance was arbitrary and capricious. That Court held that "Supreme Court properly determined that the petitioner had a preexisting nonconforming use and that it had demonstrated that the proposed use was an integral part of the original plan for the entire parcel” (231 AD2d 726) such that an extension or *458 expansion of the nonconforming use would be permitted under Syracuse Aggregate (supra).

II.

The nature and extent of a preexisting nonconforming use generally will determine the amount of protection accorded that use under a zoning ordinance (4 Rathkopf, Zoning and Planning § 51.02, at 51-15 to 51-16 [4th ed]). A nonconforming use may not be established through an existing use of land that was commenced or maintained in violation of a zoning ordinance (1 Anderson, New York Zoning Law and Practice § 6.10, at 213-214 [3d ed]).
Petitioner asserts that the inclusion of co-worker apartments in buildings such as Building 10 is one of the "adjunct services and facilities” contemplated by the Town of Ramapo Zoning Board of Appeals when it issued the 1963 special permit to petitioner. Yet petitioner did not supply the court with a copy of the master plan that accompanied the 1963 special permit application. Moreover, the special permit itself recites that the Board could not make an interpretation of the effect of the Town zoning ordinance upon the then-proposed facility due to the lack of detailed information in the petitioner’s presentation. A contemporaneous letter from the Town Planning Board indicates that apartment units were not permitted even by special permit in a single-family residential zone.
In the absence of proof that the Town considered the inclusion of co-worker apartments to be part of the special permit in 1963, we cannot assume that co-worker apartments came within the terms of the Town’s special permit. Obviously, however, co-worker apartments were built thereafter without objection from the Town, and existed when the Village zoning ordinance was enacted. Accordingly, we must analyze the nature of petitioner’s nonconforming use based upon its scope at that time, and not solely by reference to the 1963 special permit.
"The law * * * generally views nonconforming uses as detrimental to a zoning scheme, and the overriding public policy of zoning in New York State and elsewhere is aimed at their reasonable restriction and eventual elimination” (Matter of Toys "R” Us v Silva, 89 NY2d 411, 417; see also, Matter of Pelham Esplanade v Board of Trustees, 77 NY2d 66, 70-71). While nonconforming uses are generally permitted to continue, they may not be enlarged as a matter of right (Matter of Crossroads Recreation v Broz, 4 NY2d 39, 42).
*459 Despite this policy, we recognized in Syracuse Aggregate that there are certain nonconforming uses of land that, " 'in the light of the character and adaptability to such use of the entire parcel, manifestly impl[y] an appropriation of the entirety to such use prior to the adoption of the restrictive ordinance’ ” (Matter of Syracuse Aggregate Corp. v Weise, supra, 51 NY2d, at 285, quoting Matter of Fairmeadows Mobile Vil. v Shaw, 16 AD2d 137, 142). We held in that case that the town could not arbitrarily deny the petitioner a permit to continue use of its land for quarrying because quarrying involved a unique use of the land "[a]s opposed to other nonconforming uses in which the land is merely incidental to the activities conducted upon it” (Matter of Syracuse Aggregate Corp. v Weise, supra, at 285).
By comparison, the denial of the use variance in this case will not prevent petitioner from continuing its previously permitted and now long-standing use of its property. That use, for a nursing home, did not manifestly imply an appropriation of the entirety of petitioner’s property at the time of the original permit in 1963 or during the ensuing 34 years of the facility’s operation. To the contrary, the 1963 special permit issued by the Town of Ramapo recited the subdivision of the Town’s zoning ordinance that limited convalescent and nursing homes to no more than 10% of the area of a parcel. Similarly, the 1992 special permit issued by the Village recited that it would not increase the size of the use. Unlike the quarrying operation in Syracuse Aggregate, then, the nursing home in this case clearly never was intended to be allowed to expand over the entire parcel (cf., United Citizens of Mount Vernon v Zoning Bd. of Appeals, 109 Misc 2d 1080).
The dissent notes our description of quarrying in Syracuse Aggregate as "unique,” and argues that petitioner’s intergenerational living program is also a unique land use such that it ought to be allowed to expand (dissenting opn, at 464,465). Acceptance of this argument would allow expansion of any nonconforming use that could fairly be characterized by its proponents as "unique” in some manner. What was "unique” about quarrying as a nonconforming use was that limiting quarrying to the land actually excavated at the time of enactment of the restrictive ordinance " 'would, in effect, deprive the landowner of his use of the property as a quarry’ ” (dissenting opn, at 464, quoting Matter of Syracuse Aggregate Corp. v Weise, supra, 51 NY2d, at 286). Petitioner will not be deprived of its current use of its property as an intergenerational living program by the denial of use variances such as the one requested in this case.
*460 Nor is there any proof in the record that the denial of the use variance for a co-worker apartment (in a building that houses a community activities center and another co-worker apartment) "restricts the ability of some elderly residents to codwell with their co-worker staff-support 'families,’ in contradiction to the Foundation’s mission and purpose.” (Dissenting opn, at 468.) If there were such proof in a particular case, it would not warrant a virtual carte blanche for expansion of the number of co-worker apartments under the theory of Syracuse Aggregate. Instead, it would be relevant to respondents’ determination whether to grant or deny a use variance in a particular instance.
We note that the use variance in this case would not require geographic expansion of Building 10, but instead would involve the creation of a second apartment within the confines of the existing building. Some changes of nonconforming uses that do not involve geographic expansion have been upheld (compare, Rogers v Association for Help of Retarded Children, 308 NY 126 [conversion from one type of children’s home to another is not expansion of nonconforming use]; and People v Perkins, 282 NY 329 [defendant entitled to increase the volume of business at nonconforming greenhouse], with Town of Somerset v Perry, 115 AD2d 313, affd 67 NY2d 1014 [nonconforming bargain store cannot be changed to diner]). However, the creation of additional apartments in a nonconforming multifamily building is at odds with the underlying zoning of petitioner’s property for single-family residences, and is an impermissible extension of a nonconforming use (see, Thayer v Baybutt, 29 AD2d 486, 488, affd 24 NY2d 1018; Crady v Newcomb, 142 AD2d 940; 4 Rathkopf, Zoning and Planning § 51A.04 [6] [f], at 51A-92 [4th ed]).
III.
We reject the alternative ground relied upon by Supreme Court, that respondents’ approval of existing co-worker apartments estopped respondents from denying a use variance for the second co-worker apartment in Building 10 (see, Matter of Parkview Assocs. v City of New York, 71 NY2d 274, 282, rearg denied 71 NY2d 995, appeal dismissed, cert denied 488 US 801). Any prior grants of variances to petitioner did not obligate respondents to grant another (Matter of Cowan v Kern, 41 NY2d 591, 595; Matter of Elwood Props. v Bohrer, 216 AD2d 562, 564). Any expenditures made by petitioner in applying for the use variance did not create a vested right because the *461 expenditures were not made in reliance upon a validly issued permit (Town of Orangetown v Magee, 88 NY2d 41, 47-48).
IV.
Because Supreme Court and the Appellate Division concluded that the addition of a second co-worker apartment was a permissible extension of a nonconforming use that did not require a use variance, neither court addressed petitioner’s argument that respondents’ denial of a use variance was arbitrary and capricious. Therefore, the case should be remitted to Supreme Court for consideration of arguments not previously addressed by that court (see, Matter of Orvis Co. v Tax Appeals Tribunal, 86 NY2d 165, 180, cert denied sub nom. Vermont Information Processing v Commissioner, N. Y. State Dept. of Taxation & Fin., 516 US 989).
Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion.