■ Mario Costa, Appellant, v Dennis Callahan, Individually and as Zoning Enforcement Officer of the Town of Claverack, et al., Respondents. [840 NYS2d 163]—

Spain, J. Appeal from a judgment of the Supreme Court (Hummel, J.), entered July 10, 2006 in Columbia County, upon a decision of the court in favor of defendants.

Plaintiff operates automobile junkyards on several lots in the Town of Claverack, Columbia County, located at sites on Gahbauer Road (lots 13 and 16) and at a site on the south side of Route 217 (lots 60, 61 and 62). Plaintiff began collecting, selling, repairing and storing junk vehicles and parts at the Gahbauer site in 1959 or 1960; he also operated auto junkyards at the Route 217 site prior to 1972, as well as an auto parts business and a used car lot at a former store which was destroyed by fire in 1999 and has not been rebuilt.[1] In 1972, defendant Town of Claverack enacted its first zoning ordinance which reportedly included all of plaintiff's lots in a residential zone.[2] Pursuant to the 1972 zoning ordinance (and as thereafter amended), junkyards are not permitted uses in a residential zone.

Prior to the adoption of local zoning, the Town had enacted an ordinance in 1963 requiring a license to operate businesses dealing in secondhand, junk vehicles and auto parts and regulating their operation. The ordinance provided that persons presently conducting such activities must apply within 30 days and, if they did not then comply with the various health, safety and other requirements, they would be granted a one-year temporary license to come into compliance; if they did not come into compliance, the ordinance directed that they cease all activities and operations. Plaintiff concededly never applied for such a license. In 1981, after zoning was enacted, the Town Board adopted Local Law No. 1 effectively superseding the 1963 ordinance, requiring licenses to operate junkyards and regulating their location and operation. Established junkyards were required to furnish information as to their location and, upon payment of a license fee, were granted a one-year license, subject to renewal thereafter provided that they were by then in compliance with all of its provisions. Since 1997, the Town has issued hundreds of orders to remedy and use violation citations to plaintiff for impermissible used car and auto parts sales and junkyard operations.

Plaintiff commenced this declaratory judgment action against

---

**1.** A stop work order was issued by the Town in 1999 when plaintiff began to rebuild without either a demolition permit or building permit; he discontinued those efforts and never obtained either permit.

**2.** The Town's zoning ordinance is not included in the record on appeal.

the Town and defendant Dennis Callahan, the Town's Zoning Enforcement Officer, seeking, among other relief, to establish that his junkyard operations at each site constitute valid, preexisting nonconforming uses. Prior to trial, plaintiff stipulated to discontinue some of his claims against defendants and to limit the triable action to (1) whether plaintiff's junkyard operations at the Gahbauer Road site is a preexisting, nonconforming use, (2) whether plaintiff's use of the Route 217 site for used car and auto part sales and repairs is a preexisting, nonconforming use, and (3) if so, "the degree to which such preexisting uses are grand-fathered and not subject to post-zoning regulations."

After a nonjury trial, Supreme Court declared that plaintiff's sites are not prior, nonconforming uses and are subject to current town ordinances and zoning laws. The court reasoned that with regard to all of the lots in issue, plaintiff had never complied with the Town's 1963 licensing ordinance. Consequently, plaintiff's operation of junkyards at these sites was not a lawful use in 1972 when the zoning ordinance was enacted so as to constitute a preexisting, nonconforming use. Further, the court held that plaintiff's use of the Route 217 site for the sale of used cars and auto parts was abandoned after the 1999 fire destroyed the building based upon plaintiff's failure to secure permits to demolish and rebuild that structure and the absence of any proof of such sales since then. Plaintiff now appeals.

The primary issue on appeal is whether plaintiff's various junkyard-related uses of these sites, which predated the 1972 zoning ordinance, conferred upon each of them the status of a valid preexisting, nonconforming use. "A use of property that is no longer authorized due to rezoning, but *lawfully existed* prior to the enactment of the existing zoning ordinance, is a nonconforming use" (*Matter of Toys "R" Us v Silva*, 89 NY2d 411, 417 [1996] [emphasis added and citations omitted]; *see* 1 Salkin, New York Zoning Law and Practice §§ 10.02, 10.08, 10.09 [4th ed]). As such, "[n]onconforming uses are necessarily inconsistent with the land-use pattern established by an existing zoning scheme" and "the overriding public policy of zoning in New York State and elsewhere is aimed at their reasonable restriction and eventual elimination" (*Matter of Toys "R" Us v Silva, supra* at 417; *see Matter of Syracuse Aggregate Corp. v Weise*, 51 NY2d 278, 284 [1980]). Resolution of the nonconforming status of plaintiff's parcels determines his right to continued use, as " '[i]t is the law of this State that nonconforming uses or structures, in existence when a zoning ordinance is enacted, are, as a general rule, constitutionally protected and will be

permitted to continue, notwithstanding the contrary provisions of the [zoning] ordinance' " (*Matter of Rudolf Steiner Fellowship Found. v De Luccia*, 90 NY2d 453, 463 [1997], quoting *People v Miller*, 304 NY 105, 107 [1952]).

Here, it was established at trial that each of plaintiff's sites are residentially zoned, that junkyard-related activities have never been permitted under the zoning ordinance, and plaintiff's activities at these sites date back to before 1972 when zoning was originally enacted. This narrows the dispositive issue to whether these junkyard-related uses "lawfully existed"—for purposes of nonconforming use status—at the time that the zoning ordinance was enacted in 1972, despite plaintiff's failure to procure licenses as required by the 1963 town ordinance or his failure to comply with its regulations. Our answer is yes.

It is now settled law that "[a] use which is otherwise lawfully maintained may be continued as a nonconforming use although the user failed to procure or renew a license, certificate, or other permit required by law" (*Matter of Stephentown Concerned Citizens v Herrick*, 246 AD2d 166, 170 [1998], *lv dismissed and denied* 96 NY2d 881 [2001] [internal quotation marks and citation omitted]; *see* 1 Salkin, New York Zoning Law and Practice § 10.12, at 10-25 [4th ed]). The rationale is that "[t]he failure to obtain a license does not render the use unlawful *in the sense intended by zoning ordinances which preserve existing lawful uses*" (*Matter of Kennedy v Zoning Bd. of Appeals of Town of N. Salem*, 205 AD2d 629, 631 [1994] [emphasis added] [internal quotation marks and citation omitted]; *see* 1 Salkin, New York Zoning Law and Practice § 10.12, at 10-25 [4th ed]; *see also Matter of Sadler v Zoning Bd. of Appeals of Town of Union Vale*, 240 AD2d 505, 506 [1997]; *Matter of Sapakoff v Town of Hague Zoning Bd. of Appeals*, 211 AD2d 874, 875 [1995], *appeal dismissed* 85 NY2d 923 [1995]). Like the failure to procure or renew licenses or permits required to operate, the failure to obtain a certificate of occupancy has also been held to not render a use illegal for purposes of nonconforming use status (*see Matter of Kennedy v Zoning Bd. of Appeals of Town of N. Salem, supra* at 631; *City of New York v Victory Van Lines*, 69 AD2d 605, 610-611 [1979]; *Matter of Rubin v Wallace*, 63 AD2d 763, 763 [1978]; *cf. Province of Meribah Socy. of Mary v Village of Muttontown*, 148 AD2d 512 [1989]).

By distinction, "[a] use initiated in violation of a zoning ordinance will not be granted protected nonconforming use status" (4 Rathkopf, Zoning and Planning § 72:13 [4th ed]; *accord* 1 Salkin, New York Zoning Law and Practice § 10.10, at 10-19 [4th ed]; *see Matter of Rudolf Steiner Fellowship Found. v*

*De Luccia, supra* at, 458; *Town of Virgil v Ford*, 160 AD2d 1073, 1074 [1990]; *Matter of Lo Guidice v Wallace*, 118 AD2d 913, 914 [1986]; *Matter of Besthoff v Zoning Bd. of Appeals of Town of Clarkstown*, 34 AD2d 782, 782 [1970]; *see also Matter of Quatraro v Village of Kenmore Zoning Bd. of Appeals*, 277 AD2d 1001, 1001 [2000]; *Incorporated Vil. of Old Westbury v Alljay Farms*, 100 AD2d 574, 574-575 [1984], *mod* 64 NY2d 798 [1985]; *Rapasadi v Phillips*, 2 AD2d 451, 452 [1956]).

Here, plaintiff demonstrated that his use of these lots was lawful when initiated, i.e., legally created, in that the use lawfully existed before the zoning restrictions which rendered that use nonconforming were adopted and was not commenced in violation of current zoning regulations (*see Matter of Keller v Haller*, 226 AD2d 639, 640 [1996]; *cf. Spilka v Town of Inlet*, 8 AD3d 812, 814 [2004]). Accordingly, as the case law dictates that the lawfulness of the preexisting use be narrowly evaluated solely by whether the use offends then-existing zoning regulations, we are constrained to conclude that plaintiff's failure to make any effort to comply with the 1963 or 1981 town licensing ordinances did not disqualify the sites from nonconforming use status as junkyards.

However, we share Supreme Court's alarm regarding plaintiff's ongoing, protracted and unquestionably flagrant lack of effort for over 40 years to even attempt compliance with the licensing requirements (*see Matter of Stephentown Concerned Citizens v Herrick, supra* at 170). While plaintiff's sites benefit for the present time from a preexisting, nonconforming use status, plaintiff remains obligated to comply—in all respects—with other applicable laws and ordinances and should not be permitted to operate in violation of governing rules and regulations "with impunity" (*Matter of Rubin v Wallace, supra* at 764).[3] If plaintiff does not demonstrate full compliance with all aspects of the licensing rules, he may forfeit the right—in part or in whole—to his continued operations.

While we find that plaintiff established a nonconforming use for these sites as junkyards, we agree with the Town's contention that plaintiff has impermissibly expanded the scope of the use well beyond their 1972 levels and, thus, the excess use of the sites is not protected or permissible. In ascertaining the scope or extent of a nonconforming use, which as a matter of

**3.** Notably, also, "municipalities may adopt measures regulating nonconforming uses and may, in a reasonable fashion, eliminate them" (*Matter of 550 Halstead Corp. v Zoning Bd. of Appeals of Town/Vil. of Harrison*, 1 NY3d 561, 562 [2003]; *see Goldblatt v Hempstead*, 369 US 590, 591-596 [1962]; *Town Bd. of Town of Southampton v 1320 Entertainment*, 236 AD2d 387, 388 [1997]).

law may not be enlarged (see *Matter of Rudolf Steiner Fellowship Found. v De Luccia*, 90 NY2d 453, 458 [1997], *supra*), the test is " 'the nature of the incipient nonconforming use, in the light of the character and adaptability to such use of the entire parcel [which] necessarily entails an examination of the nature of the particular nonconforming use in issue as well as the activities engaged in by the landowner in effectuating that use prior to the adoption of the restrictive ordinance' " (*id.* at 463-464, quoting *Matter of Syracuse Aggregate Corp. v Weise*, 51 NY2d 278, 285 [1980], *supra*).

While Supreme Court did not rule on the scope of plaintiff's nonconforming use, given its conclusion that such use had not been established, the court's detailed factual findings—which are fully supported in the record on appeal—provide ample grounds upon which to conclude that the nature of plaintiff's activities and uses prior to 1972 had not implied an appropriation of the entirety of the sites to junkyard-related uses (see *Matter of Rudolf Steiner Fellowship Found. v De Luccia, supra* at 459). Unlike rock quarrying which is a "unique use of land" as a "diminishing asset," operation of a junkyard is a nonconforming use in which the land is "merely incidental to the activities conducted upon it" (*Matter of Syracuse Aggregate Corp. v Weise, supra* at 285). Thus, plaintiff had no right to enlarge and expand the nonconforming uses to the entirety of the parcels in contravention of the residential zoning of the lots, and his doing so constituted an "impermissible extension of a nonconforming use" (*Matter of Rudolf Steiner Fellowship Found. v De Luccia, supra* at 460).[4] By any measure, plaintiff's use of these lands to store, salvage, repair and sell junked vehicles, in whole or as parts, has expanded substantially beyond the scope of 1972 levels. That plaintiff shifted his business focus to accumulating large numbers of junk cars for compacting by a mobile crusher, a disposal method which reportedly now requires a large volume to be profitable, did not entitle him to the expansion undertaken in violation of applicable zoning restrictions. Accordingly, the declaration of plaintiff's nonconforming use is limited to 1972 levels in all respects and the matter is remitted to Supreme Court for further proceedings to delineate the precise parameters of plaintiff's preexisting use, which we are unable to define on the record before us.

---

4. For example, the proof at trial with regard to the Gahbauer Road site prior to 1972 is that it was 50% occupied by junk auto storage containing approximately 175 cars whereas by trial it was 80-90% auto storage occupied, containing about 400-450 cars. The Route 217 site occupation expanded from 12-20 junk cars stored in 1972 to 46-50 stored by the time of trial.

Finally, by failing to raise the issue in his brief on appeal, plaintiff has abandoned any claim addressed to Supreme Court's determination that his use of the Route 217 site for a used car dealership and auto parts sales was abandoned after the fire in 1999 for a period exceeding one year and, as such, is no longer a preexisting nonconforming use under the town zoning ordinance (*see Matter of Boland v Town of Northampton*, 25 AD3d 848, 850 [2006]).

Crew III, J.P., Mugglin, Lahtinen and Kane, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by declaring that the junkyard-related uses of each of plaintiff's sites in issue are nonconforming uses, limited in scope to 1972 levels, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.