■ BUFFALO CRUSHED STONE, INC., Appellant-Respondent, v TOWN OF CHEEKTOWAGA, Respondent-Appellant. [864 NYS2d 598]—

Appeal and cross appeal from a judgment (denominated order) of the Supreme Court, Erie County (Joseph R. Glownia, J.), entered April 19, 2007 in a declaratory judgment action. The judgment, among other things, declared that quarrying on subparcels 17C/25C and 12B/25I is a lawful nonconforming use.

It is hereby ordered that the judgment so appealed from is modified on the law by vacating the declaration in the last decretal paragraph with respect to the northern portion of parcel 31 and granting judgment in favor of plaintiff as follows: "It is ADJUDGED AND DECLARED that quarrying or min-

ing is a permitted use on the northern portion of parcel 31," and by vacating the second decretal paragraph and granting judgment in favor of defendant as follows: "It is ADJUDGED AND DECLARED that quarrying or mining is not a lawful nonconforming use on subparcels 17C/25C and 12B/25I" and as modified the judgment is affirmed without costs.

Memorandum: Plaintiff commenced this action seeking, inter alia, judgment declaring that all quarrying or mining of its property situated outside of defendant's "AG-Special Aggregate District" is permitted as a lawful nonconforming use. Plaintiff owns approximately 280 acres of real property within the Town of Cheektowaga upon which it operates a hard rock quarry on approximately one half of its land. The quarry began operations in 1929 when it was owned and operated by the Cheektowaga Crushed Stone Corporation, and that corporation thereafter changed its name to Federal Crushed Stone Corporation (Federal). In 1968, Federal merged with the Bituminous Products Corporation to become the Buffalo Slag Company and, in 1983, plaintiff purchased the Buffalo Slag Company together with all of its interests in the 280 acres of land.

In 1969, defendant repealed its 1942 zoning ordinance and enacted a new zoning ordinance that created several districts and subdistricts, including an "AG-Aggregate District" in which, inter alia, quarrying was a permitted use. The current zoning ordinance has not altered the physical limits of the Aggregate District created by the 1969 zoning ordinance, but the name of that district has simply been changed to an "AG Special Aggregates District." All of plaintiff's quarrying operations are currently conducted on that portion of plaintiff's property that is located within the AG Special Aggregates District. The portion of plaintiff's property located outside of the AG Special Aggregates District, which is the subject of this appeal and cross appeal, consists of property denominated by defendant as parcel 5, subparcel 25D, and a parcel that includes subparcels 28A and B, 29A and B, and 30A and B, parcels 31 through 33, and subparcels 17C/25C and 12B/25I. Defendant moved for summary judgment seeking a declaration that specified real property is not entitled to nonconforming use status under its zoning ordinance, and plaintiff cross-moved for summary judgment seeking a declaration "that all quarrying operations conducted anywhere within the boundaries of [its property]" are entitled to such status. Supreme Court granted judgment declaring, inter alia, that the quarrying of subparcels 17C/25C and 12B/25I is a lawful nonconforming use and that parcel 5, subparcels

25D, 28A and B, 29A and B, and 30A and B, and parcels 31 through 33 are not entitled to nonconforming use rights. This appeal and cross appeal ensued.

It is well settled that "[t]he law . . . generally views nonconforming uses as detrimental to a zoning scheme, and the overriding public policy of zoning in New York State and elsewhere is aimed at their reasonable restriction and eventual elimination" (*Matter of Toys "R" Us v Silva,* 89 NY2d 411, 417 [1996]; *see Matter of Rudolf Steiner Fellowship Found. v De Luccia,* 90 NY2d 453, 458 [1997]). Further, "[w]hile nonconforming uses are generally permitted to continue, they may not be enlarged as a matter of right" (*Rudolf Steiner Fellowship Found.,* 90 NY2d at 458). Contrary to the contention of plaintiff on its appeal, we conclude that the court properly declared that plaintiff was not entitled to quarry parcel 5 and subparcel 25D as a lawful nonconforming use inasmuch as plaintiff failed to establish substantial quarrying activities prior to 1969 on that parcel and subparcel that "clearly manifest[ed] an intent to appropriate the entire parcel to the particular business of quarrying" (*Matter of Syracuse Aggregate Corp. v Weise,* 51 NY2d 278, 286 [1980]; *see Matter of Skenesborough Stone v Village of Whitehall,* 272 AD2d 674, 676-677 [2000], *appeal dismissed* 95 NY2d 902 [2000]; *Matter of Squire v Conway,* 256 AD2d 771, 773 [1998]; *Speonk Sand & Gravel Co. v Town of Southampton,* 127 AD2d 828 [1987]). Indeed, plaintiff concedes that no actual mining has occurred on that parcel and subparcel.

We note in particular with respect to parcel 5 that, contrary to plaintiff's contentions, the fact that in 1951 Federal's accounting department indicated that parcel 5 contained 5,000,000 tons of aggregates material, along with the fact that in 1963 plaintiff unsuccessfully attempted to relocate Indian Road to the southern boundary of its property, merely demonstrates an intended use of the parcel for quarrying that is insufficient to confer nonconforming use status (*see Syracuse Aggregate Corp.,* 51 NY2d at 284-285; *Squire,* 256 AD2d at 773). Further, it is immaterial that in 1958 there were 6,000 feet of 16-inch pipe running along Indian Road to a pumping station off plaintiff's property. That is not evidence of infrastructure devoted to mining similar to the network of service roads placed throughout the parcel in *Syracuse Aggregate Corp.* (51 NY2d at 286). The other activities cited by plaintiff all occurred after the effective date of the 1969 zoning ordinance and thus are irrelevant to establish a prior lawful nonconforming use (*see Martino v Town of Bergen,* 98 AD2d 968 [1983], *lv denied* 61 NY2d 606 [1984]). Moreover, parcel 5 is physically separated by Indian Road from

plaintiff's other lands, and "it [is not] possible to extend the protection of a permitted nonconforming use established on one parcel of land to physically separate though adjoining parcels" (*Syracuse Aggregate Corp.*, 51 NY2d at 286). With respect to subparcel 25D, plaintiff has not demonstrated that it acquired the rights to quarry that subparcel prior to 1969. Rather, we conclude that the description of the leased premises in a 1959 lease that according to plaintiff granted to it the right to quarry that subparcel unambiguously describes a parcel of land that does not include subparcel 25D. Further, because plaintiff also failed to establish that it conducted any "substantial quarrying activities" on that subparcel prior to 1969 that "clearly manifest an intent to appropriate the entire parcel to the particular business of quarrying," plaintiff is not entitled to extend the protection of a permitted nonconforming use to that subparcel (*id.*).

Although we agree with plaintiff that the six streets comprising subparcels 28A and B, 29A and B, and 30A and B, and parcels 31 through 33 have not "been traveled or used as a highway for six years [and thus] shall cease to be a highway . . . and shall be deemed abandoned as a right-of-way" (Highway Law § 205 [1]; *see Matter of Wills v Town of Orleans,* 236 AD2d 889, 890 [1997]), plaintiff is not benefitted thereby. Despite the abandonment of those subparcels and parcels, plaintiff is not entitled to quarry them as a nonconforming use "merely because they are contiguous" to plaintiff's other subparcels and parcels where quarrying has occurred over a long period of time (*Matter of Rodrigues v Rosenthal,* 112 AD2d 1000, 1002 [1985], *lv denied* 67 NY2d 610 [1986]). Plaintiff failed to establish in addition that it conducted some prior mining operations on these subparcels and parcels that evidenced "an intent to appropriate the entire parcel" for such operations (*Syracuse Aggregate Corp.,* 51 NY2d at 286). There is, however, one minor exception. The northern portion of parcel 31 (Reading Avenue) is in fact located within the AG Special Aggregates District, and quarrying or mining therefore is a permitted use with respect to that portion of parcel 31. We therefore modify the judgment accordingly.

Lastly, we agree with defendant on its cross appeal that the court erred in declaring that quarrying or mining subparcels 17C/25C and 12B/25I is a lawful nonconforming use. We therefore further modify the judgment accordingly. Plaintiff failed to offer any evidence that any kind of quarrying activities were ever conducted on those subparcels prior to 1969, despite the fact that plaintiff applied for and was issued mining permits in 1955 and 1960. The issuance of mining permits, without any

other activities undertaken in furtherance of mining, are precisely the type of "self-serving acts of a very limited nature [that cannot be deemed to] have thrown a protective mantle of nonconforming use over [plaintiff's] entire parcel of land as against a later prohibitory zoning ordinance" (*id.*). In light of our determination, we need not address defendant's remaining contentions with respect to those subparcels.

All concur except Martoche, J.P., and Green, J., who dissent in part in accordance with the following memorandum.

Martoche, J.P., and Green, J. (dissenting in part). We respectfully dissent in part and would modify the judgment by vacating the declaration in the last decretal paragraph with respect to subparcels 28A, 28B, 29A, 29B, 30A, and 30B, and parcels 31 through 33 and granting judgment in favor of plaintiff declaring that quarrying or mining is a permitted use on those subparcels and parcels and by vacating the declaration in that decretal paragraph with respect to subparcel 25D. The status of that subparcel is not properly determined in the context of the instant motion and cross motion for summary judgment.

Preliminarily, we note our agreement with the majority that Supreme Court properly declared that plaintiff was not entitled to quarry parcel 5 as a lawful nonconforming use. As the majority correctly notes, parcel 5 is physically separated by Indian Road from plaintiff's other lands, and to afford it nonconforming use status would impermissibly extend the protection of a permitted nonconforming use established on one parcel of land to a physically separate though adjoining parcel (*see Matter of Syracuse Aggregate Corp. v Weise,* 51 NY2d 278, 286 [1980]).

Addressing first subparcel 25D, we note that we cannot agree with the majority's analysis with respect to that subparcel because, in our view, the majority incorrectly states that plaintiff did not demonstrate that it acquired the rights to quarry that subparcel prior to 1969. Plaintiff submitted an affirmation of a title examiner and attorney, who concluded that all of the property identified as parcel 2, which necessarily included subparcel 25D, was acquired in fee or by lease prior to 1969. Additionally, plaintiff submitted an affidavit of its executive vice-president, who stated that subparcel 25D was leased in 1959 by plaintiff's predecessor in interest. In our view, plaintiff thereby raised an issue of fact whether plaintiff's predecessor in interest leased subparcel 25D prior to 1969, and thus neither party is entitled to summary judgment with respect to the status of subparcel 25D.

We further disagree with the majority that quarrying or mining is not a lawful nonconforming use on subparcels 17C/25C

and 12B/25I and that subparcels 28A and B, 29A and B, and 30A and B, and parcels 31 through 33 are not entitled to nonconforming use rights. The majority correctly agrees with plaintiff that the six streets comprising those subparcels and parcels are deemed abandoned as a right-of-way pursuant to Highway Law § 205 (1) (*see Matter of Wills v Town of Orleans,* 236 AD2d 889, 890 [1997]). In our view, however, the majority misconstrues the holding in *Syracuse Aggregate Corp.* in concluding that plaintiff failed to establish that it conducted some prior mining operations on those subparcels and parcels that evidenced "an intent to appropriate the entire parcel" for such operations (51 NY2d at 286). For example, parcels 28A and B appear to be, according to maps submitted by the parties, an unused extension of Hawthorne Avenue. Although the actual acreage of subparcels 28A and B is not clear from the record, it is obvious that those subparcels represent a relatively small percentage of the entire parcel and that property surrounding those subparcels has been mined. Under the majority's interpretation of *Syracuse Aggregate Corp.,* the owner of a mine/quarry would be required to conduct some activity on every square inch of its property in order to establish nonconforming use status for the entire parcel. In our view, however, *Syracuse Aggregate Corp.* does not require such activities throughout the entire property. Indeed, the Court of Appeals recognized therein that, "as a matter of practicality as well as economic necessity, a quarry operator will not excavate his entire parcel of land at once, but will leave areas in reserve, virtually untouched until they are actually needed" (*id.* at 285).

Our view that subparcels 28A and B, 29A and B, 30A and B, and parcels 31 through 33 are entitled to nonconforming use rights is supported by the facts in Syracuse Aggregate Corp. In that case, the petitioner owned a 25-acre parcel that had been used since the 1920s for the excavation of sand, gravel, topsoil and fill. The petitioner's predecessor in interest made improvements to the land, including a network of haul roads, a structure located in the center of the property, and a storage shed for tools. This Court reversed the judgment of Supreme Court and, inter alia, authorized the petitioner "to conduct the nonconforming use on the entire parcel" even though the petitioner's predecessor in interest had not excavated on every portion of the parcel (72 AD2d 254, 260 [1980]). In affirming our order, the Court of Appeals noted that no part of the petitioner's land "was ever dedicated to a use other than the quarrying of sand and gravel" (51 NY2d at 286). The Court further noted that a landowner could not undertake a "few self-serving acts of a very limited nature . . . [to throw] a protective mantle of

nonconforming use over his [or her] entire parcel" (*id.*). However, the Court went on to write that, where, as in Syracuse Aggregate Corp., the owner "engages in substantial quarrying activities on a distinct parcel of land over a long period of time and these activities clearly manifest an intent to appropriate the entire parcel to the particular business of quarrying, the extent of protection afforded by the nonconforming use will extend to the boundaries of the parcel even though extensive excavation may have been limited to only a portion of the property" (*id.*). Here, plaintiff and its predecessors in interest engaged in "substantial quarrying activities on a distinct parcel of land over a long period of time," and it does not appear from this record that any part of the land was ever "dedicated to a use" other than quarrying (*id.*).

The requirement imposed by the majority that plaintiff establish that "any kind of quarrying activities" were conducted on every subparcel and parcel would render moot the nonconforming use issue because, if plaintiff could establish that it conducted "any kind of quarrying activities" on every square inch of its property, there would be no question that the entire parcel would be entitled to nonconforming use status. In our view, it is inappropriate to divide a large parcel into various parts based on dates of lease and/or acquisition. Rather, in accordance with the analysis of the Court of Appeals in *Syracuse Aggregate Corp.*, we conclude that the distinct parcel should be considered in its entirety, with the exception of the portion separated by a barrier, i.e., a roadway, in determining whether the parcel is entitled to nonconforming use status. Present—Martoche, J.P., Centra, Lunn, Peradotto and Green, JJ.