■ FRANK D. MAKI, Appellant, v. BASSETT HEALTHCARE et al., Respondents. [924 NYS2d 688]—

Spain, J. Appeals (1) from an order of the Supreme Court (Peckham, J.), entered November 18, 2010 in Delaware County, which, among other things, granted defendants' cross motion for summary judgment dismissing the complaint, and (2) from an order of said court, entered November 18, 2010 in Delaware County, which denied plaintiff's motion for, among other things, recusal.

Plaintiff commenced this action, pro se, alleging a variety of negligence-based and intentional torts stemming from medical treatment rendered by defendants following a 2008 motor vehicle accident. After Supreme Court granted defendants' cross motion for summary judgment, plaintiff moved to resettle Supreme Court's order and requested that the judge recuse himself. Supreme Court denied that motion. Plaintiff now appeals both from the order dismissing the complaint and the order denying his motion.[1]

We affirm. Plaintiff's first argument is that Supreme Court improperly characterized this action as sounding in medical

1. Although plaintiff's notice of appeal is from Supreme Court's September 30, 2010 decision, rather than the subsequent order entered November 18, 2010, in the interest of justice we will treat the premature appeal to be taken from the subsequent, appealable order (*see* CPLR 5520 [c]; *O'Brien v O'Brien*, 16 AD3d 1015, 1016 n 2 [2005]). Likewise, plaintiff's appeal from the separate paper titled "decision," also entered November 18, 2010, that "ordered" that plaintiff's motion for disqualification was denied, will be treated as an appeal from an order (*see* CPLR 5512 [a]; *Hammerstein v Henry Mtn. Corp.*, 11 AD3d 836, 837-838 [2004]). To the extent that plaintiff seeks to appeal that portion of the order that denied his motion to resettle the decision, that ruling is not appealable (*see Matter of Biasutto v Biasutto*, 75 AD3d 671, 672 [2010]; *see also* CPLR 5517 [a] [2]).

malpractice and, accordingly, that its subsequent analysis granting summary judgment to defendants was flawed. In his complaint, plaintiff alleged "medical negligence," specifically stating that defendants failed to "apply [their] knowledge, use reasonable care in the exercise of [their] skill, or use [their] best judgment while examining and treating" plaintiff, resulting in injuries arising from their failure to timely diagnose and properly treat him. "Conduct may be deemed malpractice, rather than negligence, when it 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician' " (*Scott v Uljanov*, 74 NY2d 673, 674-675 [1989], quoting *Bleiler v Bodnar*, 65 NY2d 65, 72 [1985]). Indeed, "medical malpractice is simply a form of negligence [and] no rigid analytical line separates the two" (*Scott v Uljanov*, 74 NY2d at 674). Given that the negligence alleged here relates entirely to the professional skill and judgment rendered by doctors, rather than information within the common knowledge of a layperson, we hold that Supreme Court properly treated it as a medical malpractice action (*see id.* at 674-675; *Lomonaco v United Health Servs. Hosps., Inc.*, 16 AD3d 958, 960-961 [2005]; *cf. Hilts v Board of Educ. of Gloversville Enlarged School Dist.*, 50 AD3d 1419, 1419-1420 [2008]).

Further, we agree that defendants were entitled to summary judgment on the malpractice claim. Plaintiff's accident occurred in Tennessee, where he was hospitalized and initially diagnosed with thrombosis of the portal vein,[2] evidence of a cyst on his right cerebellopontine angle[3] and a possible fracture of the right ankle. He was prescribed Coumadin—an anticoagulant—for the thrombosis, instructed to contact his primary care physician in seven days, and discharged. Thereafter, upon his return to New York, plaintiff was treated by defendant Shannon Conrad, a physician, who continued him on Coumadin and referred him to defendant James Leonardo, a physician specializing in hematology. In May 2009, Coumadin treatment was terminated and both physicians cleared plaintiff to return to work. Plaintiff was advised that the thrombosis had likely resolved as much as it ever would. At the relevant time, Conrad and Leonardo were employed by defendant Bassett Healthcare in Delaware County.

Thereafter, plaintiff began to seek work but, while working

---

**2.** Thrombosis is the presence of a blood clot within the vascular system which can obstruct the flow of blood through the body; the portal vein conveys blood into the liver (*see* Taber's Cyclopedic Medical Dictionary 1711-1712, 2185 [19th ed 2001]).

**3.** The cerebellopontine angle is the angle formed by the junction of the cerebellum, at the back of the brain, and the pons, in the brainstem (*see* Taber's Cyclopedic Medical Dictionary 122, 283-286, 378-379 [19th ed 2001]).

on a rock wall at home prior to securing a job, he experienced severe back pain. Plaintiff then visited Michael Freeman, another physician who ordered a CT scan that showed portal hypertension with splenomegaly[4] and significant spinal disc degeneration. Freeman recommended physical therapy which, according to plaintiff, has made a marked improvement in his condition. Plaintiff asserts that had defendants properly diagnosed him and prescribed physical therapy rather than releasing him to work, he would have had less pain and suffering and been able to return to work sooner.

As the proponents of summary judgment, defendants had the initial burden to demonstrate that they were not negligent, i.e., that the medical treatment they rendered to plaintiff was within acceptable standards of care or that their actions did not cause the asserted injuries (*see Hickey v Arnot-Ogden Med. Ctr.*, 79 AD3d 1400, 1401-1402 [2010]; *DeLorenzo v St. Clare's Hosp. of Schenectady, N.Y.*, 69 AD3d 1177, 1179 [2010]). Defendants submitted sworn affirmations by Conrad and Leonardo describing their treatment of plaintiff and stating that they did not deviate from the appropriate standard of care. Specifically, with respect to his traumatic portal vein thrombosis, Leonardo opined that the six-month regimen of Coumadin prescribed for plaintiff was appropriate. Conrad's affirmation addresses plaintiff's assertion that she failed to identify fractures in his spine, stating that plaintiff's intervertebral disk degeneration was indicative of a long-term condition not associated with his accident and that, given plaintiff's single complaint of minor lower back pain, more aggressive treatment was inappropriate. Further, the CT scan of plaintiff's lower back taken in Tennessee revealed evidence of "some old compression fractures" but "without definite acute fracture." In addition, Conrad referred plaintiff to a neurosurgeon who concluded that the cerebellopontine angle cyst was congenital and therefore required no further action. Finally, Conrad opined that no treatment was necessary with regard to plaintiff's potential ankle fracture as he was not experiencing any discomfort. Based on this evidence, we agree with Supreme Court that defendants met their burden to show that no negligence on their part caused plaintiff's alleged injuries (*see DeLorenzo v St. Clare's Hosp. of Schenectady, N.Y.*, 69 AD3d at 1178-1179; *Suib v Keller*, 6 AD3d 805, 806

---

**4.** Portal hypertension is an "[i]ncreased pressure in the portal vein caused by an obstruction of the flow of blood through the liver" (Taber's Cyclopedic Medical Dictionary 1033 [19th ed 2001]). Splenomegaly is an enlargement of the spleen that may be caused by portal hypertension and "may cause a sense of discomfort in the left upper quadrant of the abdomen" (Taber's Cyclopedic Medical Dictionary 2030 [19th ed 2001]).

[2004]; *Rossi v Arnot Ogden Med. Ctr.*, 268 AD2d 916, 917 [2000], *lv denied* 95 NY2d 751 [2000]; *Stuart v Ellis Hosp.*, 198 AD2d 559, 560 [1993]).

The burden thus shifted to plaintiff "to show, by competent medical proof, that a deviation from the accepted standard of care occurred and that a causal nexus existed between the deviation and [his or] her injuries" (*Plourd v Sidoti*, 69 AD3d 1038, 1039 [2010]). Plaintiff's only medical proof in opposition is an unsworn letter written by Freeman, in which he states that the CT scan of plaintiff revealed portal hypertension with splenomegaly and severe disc degeneration. Significantly, the letter says nothing regarding the applicable standard of care for diagnosing or treating these conditions, and offers no opinion as to whether any departure from the appropriate standard occurred in plaintiff's case. In addition, because the unsworn letter has no probative value, plaintiff's submission cannot overcome defendants' entitlement to summary judgment (*see Lentini v Page*, 5 AD3d 914, 916 [2004]; *Parmisani v Grasso*, 218 AD2d 870, 872 [1995]). Indeed, plaintiff has not pleaded facts that would demonstrate any definitive deficiencies in the diagnoses or treatments proffered by defendants. Contrary to his assertions, we find no record evidence of undiagnosed spinal fractures attributable to his motor vehicle accident. Accordingly, summary judgment was properly awarded to defendants on the malpractice claim (*see Rivera v Kleinman*, 16 NY3d 757, 759 [2011]; *Caulkins v Vicinanzo*, 71 AD3d 1224, 1226-1227 [2010]; *DeLorenzo v St. Clare's Hosp. of Schenectady, N.Y.*, 69 AD3d at 1179; *Stuart v Ellis Hosp.*, 198 AD2d at 560-561).[5]

Likewise, summary judgment was properly granted on plaintiff's fraud claim. "The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages" (*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009] [citations omitted]). A plaintiff claiming fraud must plead "the circumstances constituting the wrong . . . in detail" (CPLR 3016 [b]) and the fraud damages must be distinct from the malpractice damages (*see Saint Alexander's Church v McKenna*, 294 AD2d 695, 696 [2002]). Here, the misrepresentations alleged by plaintiff all concern alleged omissions or statements given by defendants to plaintiff in their role as his treating physicians and plaintiff has

5. Given that plaintiff has not shown that Conrad or Leonardo were negligent nor any alleged independent action of the hospital subjecting it to liability, the complaint was also properly dismissed as against Bassett Healthcare (*see Machac v Anderson*, 261 AD2d 811, 813 [1999]).

not alleged injuries separate from those alleged in support of his malpractice claim. Under these circumstances, plaintiff has not stated an independent cause of action for fraud (*see* CPLR 3016 [b]; *Cellupica v Bruce*, 48 AD3d 1020, 1021-1022 [2008]). Likewise, plaintiff's assertion that defendants were conspiring to defraud him is entirely premised on the unsupported speculation that they were cooperatively negligent in the care provided to him.[6]

Finally, plaintiff argues that the trial judge erred in declining to recuse himself from plaintiff's case. Absent a ground for mandatory disqualification under Judiciary Law § 14, which plaintiff does not allege, a decision regarding recusal is left to the judge's discretion (*see Mokay v Mokay*, 67 AD3d 1210, 1213 [2009]). We discern no abuse of discretion here where the allegedly improper legal rulings issued by Supreme Court that plaintiff relies upon were not, in fact, erroneous and, in any event, do not call into question the judge's ability to be impartial (*see Mokay v Mokay*, 67 AD3d at 1213; *Matter of Albany County Dept. of Social Servs. v Rossi*, 62 AD3d 1049, 1050 [2009]).

Peters, J.P., McCarthy, Garry and Egan Jr., JJ., concur. Ordered that the orders are affirmed, without costs.

---

**6.** On appeal, plaintiff does not contest the dismissal of his claims for intentional interference with a contractual relationship and intentional infliction of emotional distress. As such, any challenge to the dismissal of these claims has been abandoned (*see Matter of Lake Grove Entertainment, LLC v Megna*, 81 AD3d 1191, 1192 n [2011]; *Costa v Callahan*, 41 AD3d 1111, 1117 [2007]).