■ In the Matter of SKENESBOROUGH STONE, INC., et al., Appellants, v VILLAGE OF WHITEHALL et al., Respondents. [708 NYS2d 171] —Rose, J. Appeal from an amended judgment of the Supreme Court (Dier, J.), entered June 18, 1999 in Washington County, which dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for a declaratory judgment, to, inter alia, set aside Local Laws, 1996, No. 3 of the Village of Whitehall.

As more fully described in this Court's prior decision (*see*, 254 AD2d 664), petitioners commenced this proceeding seeking to invalidate Local Laws, 1996, No. 3 of the Village of Whitehall (hereinafter Local Law No. 3), which established comprehensive zoning regulations for respondent Village of Whitehall in Washington County. Under Local Law No. 3, mining activities were prohibited within the Village except if such activities qualified as a prior nonconforming use. Supreme Court initially dismissed petitioners' constitutional challenges to Local Law No. 3. On appeal, this Court agreed that petitioners' challenges lacked merit, but held that Supreme Court erred in awarding summary judgment to respondents on petitioners' claim of a prior nonconforming use (*id.*, at 667). Citing references in petitioners' affidavits to various site preparation measures and the removal of several truckloads of stone from a 400-acre parcel of land located in the Village, this Court framed the issue on remittal to Supreme Court as follows: "[T]he record does not conclusively establish whether such operations were ongoing at the time of the enactment of Local Law No. 3 * * * Accordingly, Supreme Court's judgment must be modified to such extent, with the issue of whether petitioners have a valid nonconforming use to be determined at trial" (*id.*, at 667).

At trial, petitioner Gilles Lariviere testified that petitioners had acquired the subject property and formed petitioner Skenesborough Stone, Inc. in 1993 for the purpose of harvesting timber and mining granite. Lariviere stated that surface stone was first removed from an unspecified portion of the 400-acre property in March 1994 and that such extraction continued until October 1994, resulting in the shipment of 8 to 10 tractor-trailer loads of stone to Canada that season. He did not otherwise describe the quantity of stone removed. Lariviere also testified that later in 1994, petitioners had applied to the Department of Environmental Conservation (hereinafter DEC) for permission to extract more than 1,000 tons per 12-month period, the maximum amount allowable without a DEC permit, from a specified 10-acre portion of the property. This application was still pending at the time of trial. Lariviere further maintained that resumption of extraction the following year ended prematurely in May 1995 due to a nine-month moratorium on mining operations imposed by enactment of Local Laws, 1995, No. 2 of the Village of Whitehall (hereinafter the moratorium). The moratorium was extended thereafter in three-month intervals until Local Law No. 3 was enacted in 1996. Lariviere offered no description of the quantity of stone removed in 1995. Speaking only in terms of truckloads of stone, petitioners' other witnesses testified imprecisely as to the

quantity of stone and the areas of the 400-acre parcel from which it was extracted.

Witnesses called by the Village had varying degrees of familiarity with petitioners' property, but all testified that they had not seen any mining activity at the site. In several instances, these witnesses either were not asked or could not clarify when their observations were made or what portions of the 400-acre site they had viewed. However, several of them did aver that they either resided or were present near petitioners' property on a nearly daily basis during the relevant time periods and yet never heard or saw evidence of removal of the materials allegedly produced by the mining operation.

After weighing the evidence, Supreme Court found that petitioners had established only the casual removal of a small amount of materials during the relevant time period and concluded that such operations did not constitute a nonconforming use of the 400-acre site. Petitioners now appeal and we affirm.

Although this Court specified the pertinent event as the enactment of Local Law No. 3 in October 1996, it is now undisputed that the parties and Supreme Court considered the relevant time to be the enactment of the moratorium in May 1995. Thus, at trial, petitioners were obligated to establish the existence and scope of their mining operations prior to that time in order to be recognized as a prior nonconforming use.

The overriding public policy of zoning in New York aims at the reasonable restriction and eventual elimination of nonconforming uses, and while such uses are generally permitted to continue after the enactment of zoning regulations, they may not be enlarged as a matter of right (*see, Matter of Steiner Fellowship Found. v De Luccia*, 90 NY2d 453, 458). However, the Court of Appeals has also recognized that " 'in the light of the character and adaptability to such use of the entire parcel, [a nonconforming use may] manifestly impl[y] an appropriation of the entirety to such use prior to the adoption of the restrictive ordinance' " (*Matter of Syracuse Aggregate Corp. v Weise*, 51 NY2d 278, 285, quoting *Matter of Fairmeadows Mobile Vil. v Shaw*, 16 AD2d 137, 142). Applying this test in the *Syracuse Aggregate* case, the court held that quarrying previously conducted principally in a five-acre portion of a parcel was a nonconforming use extending throughout the 25-acre property where the owner had engaged in substantial quarrying activities over a long period of time (*see, Matter of Syracuse Aggregate Corp. v Weise, supra*, at 286). The owner had extensively excavated the five-acre portion of the parcel, removed differing

types of material from various specifically identified areas throughout the parcel, constructed service roads throughout the parcel, located a processing structure in its center and never dedicated any part of the parcel to any other use (*see, id.*, at 286).

Here, petitioner argues that mineral extraction occurred throughout the entire 400-acre property. However, there was very minimal bulldozing of surface stone in randomly selected, easily accessed areas of the property over a period of less than 15 months. There also was no testimony as to the extent of roadways constructed to facilitate stone removal and no proof of any other structures being constructed for the operation. In addition, there was evidence that the property had been purchased and used for purposes of harvesting its timber, and that the substantial, extensive extraction of stone was merely proposed subject to obtaining a DEC permit, rather than ongoing at the time of the moratorium. Moreover, it is clear that Supreme Court did not credit the testimony of petitioners' witnesses concerning the nature and extent of the stone extraction. Instead, Supreme Court expressly accepted the testimony of DEC's witnesses that no mining operation was being conducted during their visits to the site and the statement in a map accompanying petitioners' application for a DEC permit that "no portion of the proposed site has been affected by mining, either before or after 4-1-75". Based on its evaluation of the credibility of the witnesses, Supreme Court properly concluded that petitioners failed to establish substantial mining activities over any significant period of time manifesting an intent to appropriate the entire 400-acre site to the particular business of mining.

Spain, J. P., Carpinello, Mugglin and Lahtinen, JJ., concur. Ordered that the amended judgment is affirmed, without costs.