■ GLACIAL AGGREGATES LLC, Respondent, v TOWN OF YORK-SHIRE, Appellant. [869 NYS2d 718]—

Memorandum: Plaintiff, the owner of approximately 216 acres of land in defendant, Town of Yorkshire (Town), commenced this action seeking, inter alia, a declaration that its mining of sand and gravel aggregate on the property in question was a lawful nonconforming use and that it had acquired a vested right to mine the property. In its amended complaint plaintiff also alleged that the Town had deprived it of its vested right to mine the property in question in violation of the United States Constitution and that it was entitled to damages pursuant to 42 USC § 1983. Following a jury trial, judgment was entered in favor of plaintiff declaring, inter alia, that the mining of sand and gravel aggregate was a lawful nonconforming use and that, because the Town had deprived plaintiff of its constitutionally vested right to mine sand and gravel aggregate on its property, plaintiff was entitled to damages in the amount of $190,000, with interest. We agree with the Town that Supreme Court erred in failing to grant its motion for a directed verdict at the close of plaintiff's evidence.

"[T]o establish a right to a nonconforming use, the person [or entity] claiming the right must demonstrate that the property was indeed used for the nonconforming purpose, as distinguished from a mere contemplated use, at the time the zoning ordinance became effective" (*Matter of Syracuse Aggregate Corp. v Weise*, 51 NY2d 278, 284-285 [1980]). Here, the evidence presented by plaintiff at trial established that, prior to the Town's adoption of a zoning law in June 2001 that prohibited mining within the Town absent a special use permit, plaintiff had applied for, received and renewed its New York Department of Environmental Conservation (DEC) mining permit. Plaintiff further established that it allowed two sand and gravel companies to remove a total of 40 truckloads or 400 tons of material for testing; it removed timber throughout the property; it surveyed and staked out the locations of the mining areas and the haul road; it drilled many test holes, designed and obtained steel for a required bridge, and dug and monitored watertable wells; and it filed periodic reports with the DEC. We conclude, however, that none of those activities constituted actual mining of sand and gravel aggregate. Rather, those activities were performed merely in contemplation of mining. Indeed, plaintiff's

general manager acknowledged on cross-examination that plaintiff "did not commercially mine the property" during the 15-month period between March 13, 2000, when the moratorium on mining activities was lifted by the Town, and June 2001, when the zoning law was enacted. Further, both plaintiff's general manager and plaintiff's sand and gravel mining consultant testified that commercial mining could not take place under the DEC permit until a bridge was constructed over a creek and 500 feet of the haul road was paved, and it is undisputed that those two conditions had not been satisfied. In order to prevail on its motion for a directed verdict, the Town " 'had the burden of showing that the evidence, viewed in the light most favorable to [plaintiff], established as a matter of law that there was no rational process by which the jury could find in favor of [plaintiff]' " (*Blanchard v Lifegear, Inc.*, 45 AD3d 1258, 1260 [2007]). We conclude on the record before us that, because "[t]he proof [presented by plaintiff] did not demonstrate that the property was actually being used for the nonconforming purpose at the time the zoning ordinance became effective," the court erred in failing to grant that part of the Town's motion for a directed verdict seeking, inter alia, a declaration that the mining of sand and gravel aggregate on the property in question is not a lawful nonconforming use of plaintiff's land (*Martino v Town of Bergen*, 98 AD2d 968 [1983], *lv denied* 61 NY2d 606 [1984]; *see Matter of Skenesborough Stone v Village of Whitehall*, 272 AD2d 674, 676-677 [2000], *appeal dismissed* 95 NY2d 902 [2000]; *Matter of Squire v Conway*, 256 AD2d 771, 773 [1998]).

We further agree with the Town that the court erred in failing to grant that part of its motion for a directed verdict declaring that plaintiff did not acquire a vested right to mine its property. "In New York, a vested right can be acquired when, pursuant to a legally issued permit, the landowner demonstrates a commitment to the purpose for which the permit was granted by effecting substantial changes and incurring substantial expenses to further the development" (*Town of Orangetown v Magee*, 88 NY2d 41, 47 [1996]; *see Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals of Inc. Vil. of New Hempstead*, 77 NY2d 114, 122 [1990]). However, "[n]either the issuance of a permit . . . nor the landowner's substantial improvements and expenditures, standing alone, will establish the right. The landowner's actions relying on a valid permit must be so substantial that the municipal action results in serious loss rendering the improvements essentially valueless" (*Town of Orangetown*, 88 NY2d at 47-48). Further, no vested rights will accrue to a landowner "[w]here substantial construction has been commenced, but expenditures thereon are unsubstantial

. . . [or] where substantial expenditures have been made but substantial construction has not commenced" (*Matter of Putnam Armonk v Town of Southeast*, 52 AD2d 10, 14 [1976]; *see Matter of Berman v Warshavsky*, 256 AD2d 334, 335-336 [1998]).

Here, plaintiff's general manager testified that approximately $800,000 was spent on this project. He further testified, however, that $750,000 of that amount was spent on acquiring the land and in obtaining the DEC mining permit. Because those expenditures were incurred by plaintiff before it obtained the mining permit and were not incurred by plaintiff in reliance on the permit, they do not constitute the type of substantial expenditures that would entitle plaintiff to a vested right to mine its property (*see Preble Aggregate v Town of Preble*, 263 AD2d 849, 851-852 [1999], *lv denied* 94 NY2d 760 [2000]). We further conclude that, viewing the evidence in the light most favorable to plaintiff, there is no rational process by which the jury could have found that plaintiff had commenced substantial construction of its sand and gravel mine sufficient to acquire a vested right to mine (*see generally Blanchard*, 45 AD3d at 1260). Indeed, although plaintiff presented evidence establishing that, in order to commence commercial mining, it was required, inter alia, to build a haul road and pave its last 500 feet, and install a bridge for the haul road over a creek, it is undisputed that plaintiff did not in fact perform any of those tasks. Thus, "[u]nder the circumstances, plaintiff did not demonstrate vested rights [inasmuch as] it failed to show that it had effected substantial changes and incurred substantial expenses to further development pursuant to a legally issued permit" (*Preble Aggregate* at 851; *see Matter of Smith v Spiegel & Sons*, 31 AD2d 819, 820 [1969], *affd* 24 NY2d 920 [1969]; *Berman*, 256 AD2d at 335-336).

Inasmuch as plaintiff did not establish that it acquired a vested right to mine its property, we conclude that the court also should have granted that part of the Town's motion for a directed verdict dismissing the second cause of action, which sought damages pursuant to 42 USC § 1983 based on the alleged violation of its rights under the United States Constitution (*see Schlossin v Town of Marilla*, 48 AD3d 1118, 1120 [2008]; *see generally Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 627 [2004]).

In light of our determination, we need not address the Town's remaining contentions. Present—Scudder, P.J., Hurlbutt, Martoche, Smith and Lunn, JJ.