[931 NE2d 535, 905 NYS2d 551]

DONALD J. JONES et al., Appellants, v TOWN OF CARROLL et al., Respondents.

Argued May 4, 2010; decided June 17, 2010

**POINTS OF COUNSEL**

*Cohen & Lombardo, P.C.,* Buffalo (*Anthony M. Nosek* of counsel), for appellants. I. The Appellate Division misunderstood and misapplied this Court's decision in *Matter of Syracuse Aggregate Corp. v Weise* (51 NY2d 278 [1980]). (*Buffalo Crushed Stone, Inc. v Town of Cheektowaga,* 55 AD3d 1228, 13 NY3d 88; *Matter of Gernatt Asphalt Prods. v Town of Sardinia,* 87 NY2d 668; *People v Miller,* 304 NY 105; *Matter of Skenesborough Stone v Village of Whitehall,* 272 AD2d 674; *Matter of 550 Halstead Corp. v Zoning Bd. of Appeals of Town/Vil. of Harrison,* 1 NY3d 561; *Town of Bedford v Peltz,* 283 AD2d 568; *Ilasi v City of Long Beach,* 38 NY2d 383; *United Citizens of Mount Vernon v Zoning Bd. of Appeals of City of Mount Vernon,* 109 Misc 2d 1080; *Matter of Dolomite Prods. Co. v Kipers,* 39 Misc 2d 627; *Incorporated Vil. of Laurel Hollow v Owen,* 247 AD2d 585.) II.

The Town of Carroll acted in an arbitrary and capricious manner when it enacted the subject ordinance. (*Matter of Conte v Town of Norfolk Zoning Bd. of Appeals,* 261 AD2d 734; *Matter of Androme Leather Corp. v City of Gloversville,* 1 AD3d 654; *Matter of WEOK Broadcasting Corp. v Planning Bd. of Town of Lloyd,* 79 NY2d 373; *Los-Green, Inc. v Weber,* 156 AD2d 994; *Interlaken Homeowners' Assn. v City of Saratoga Springs,* 267 AD2d 842; *Matter of Miller v Kozakiewicz,* 289 AD2d 494.) III. The Town of Carroll violated the State Environmental Quality Review Act (SEQRA) when it failed to identify any impact and provided no reasoned elaboration as required by SEQRA and the Town of Carroll acted in an arbitrary and capricious manner when it enacted the subject ordinance. (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Matter of East Coast Props. v City of Oneida Planning Bd.,* 167 AD2d 641; *Matter of Consolidated Edison Co. of N.Y. v Hoffman,* 43 NY2d 598; *Matter of New York City Coalition to End Lead Poisoning v Vallone,* 100 NY2d 337; *Matter of Malloy v Incorporated Vil. of Sag Harbor,* 12 AD3d 107; *Matter of Spitzer v Farrell,* 100 NY2d 186; *Akpan v Koch,* 75 NY2d 561; *Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359; *Matter of Dunk v City of Watertown,* 11 AD3d 1024; *Matter of King v Saratoga County Bd. of Supervisors,* 89 NY2d 341.) IV. If a town can, through the exercise of its police power, extinguish a lawful use merely because it has become unpopular, a disastrous precedent is established as a matter of public policy.

*Erickson Webb Scolton & Hajdu,* Lakewood (*Paul V. Webb, Jr.,* of counsel), for respondents. I. Local Law No. 1 (2005) of the Town of Carroll eliminated landfills as a nonconforming use in the Town's agricultural-residential (AR-1) zoning district in a reasonable fashion. (*Matter of Syracuse Aggregate Corp. v Weise,* 51 NY2d 278; *Matter of Harbison v City of Buffalo,* 4 NY2d 553; *Matter of 550 Halstead Corp. v Zoning Bd. of Appeals of Town/ Vil. of Harrison,* 1 NY3d 561; *Briarcliff Assoc. v Town of Cortlandt,* 272 AD2d 488, 95 NY2d 886; *Matter of Gernatt Asphalt Prods. v Town of Sardinia,* 87 NY2d 668; *People v Miller,* 304 NY 105.) II. The Town of Carroll rationally exercised its police power when it enacted Local Law No. 1 in 2005. (*Matter of Gernatt Asphalt Prods. v Town of Sardinia,* 87 NY2d 668; *Udell v Haas,* 21 NY2d 463; *Randolph v Town of Brookhaven,* 37 NY2d 544; *Los-Green, Inc. v Weber,* 156 AD2d 994; *Matter of Town of Bedford v Village of Mount Kisco,* 33 NY2d 178.) III. Plaintiffs did not have a vested right to operate a construction and demolition landfill as a nonconforming use over their entire 50 acres.

*(Matter of Syracuse Aggregate Corp. v Weise,* 72 AD2d 254, 51 NY2d 278; *Matter of Harbison v City of Buffalo,* 4 NY2d 553; *Buffalo Crushed Stone, Inc. v Town of Cheektowaga,* 55 AD3d 1228, 13 NY3d 88; *Telimar Homes v Miller,* 14 AD2d 586; *Marra v State of New York,* 61 AD2d 38; *Town of Lima v Harper,* 55 AD2d 405; *Breed v Town of Clay,* 21 Misc 2d 856, 11 AD2d 625.) IV. The Appellate Division did not misapply *Matter of Syracuse Aggregate Corp. v Weise* (51 NY2d 278 [1980]) by concluding plaintiffs' nonconforming use did not extend over plaintiffs' entire 50-acre parcel. *(Marra v State of New York,* 61 AD2d 38; *Matter of Fairmeadows Mobile Vil. v Shaw,* 16 AD2d 137; *Matter of Cave v Zoning Bd. of Appeals of Vil. of Fredonia,* 49 AD2d 228; *Buffalo Crushed Stone, Inc. v Town of Cheektowaga,* 13 NY3d 88.) V. The Town of Carroll complied with the State Environmental Quality Review Act prior to adopting Local Law No. 1 of 2005. *(Matter of Gernatt Asphalt Prods. v Town of Sardinia,* 87 NY2d 668; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400; *Matter of Dunk v City of Watertown,* 11 AD3d 1024.)

## OPINION OF THE COURT

GRAFFEO, J.

Applying our decisions in *Matter of Syracuse Aggregate Corp. v Weise* (51 NY2d 278 [1980]), *Buffalo Crushed Stone, Inc. v Town of Cheektowaga* (13 NY3d 88 [2009], *rearg denied* 13 NY3d 808 [2009]) and *Glacial Aggregates LLC v Town of Yorkshire* (14 NY3d 127 [2010]), we hold that the zoning ordinance at issue in this case, which restricted the development of landfills, does not apply to plaintiffs because they acquired a vested right to use their 50-acre parcel as a landfill for construction and demolition debris before the enactment of the zoning law.

In 1984, plaintiffs Donald and Carol Jones purchased 50 acres of land in an agricultural/residential zoning district in the Town of Carroll, Chautauqua County. In 1989, the Town granted plaintiffs a special use variance that permitted the operation of a construction and demolition (C & D) landfill on the entire parcel, provided that the New York State Department of Environmental Conservation (DEC) regulated the landfill. Consistent with the Town's requirements, plaintiffs obtained a DEC permit later that year allowing landfill operations to commence

on roughly two acres and the permit was subsequently expanded to cover three acres.[1]

The landfill continued as an active business, but in 2005, the Town adopted a new zoning law that prohibited the "expansion of any landfill beyond the area and scope allowed under the operators [*sic*] permit from the DEC as of the date of this Local Law." Relying on this new restriction, the Town sought to prevent plaintiffs from using the remaining 47 acres of their property for landfill purposes.

Plaintiffs then commenced this action seeking, among other relief, a declaration that the local law could not be validly applied to their property because the use variance and their activities on the land established a right to operate a landfill on all 50 acres. Following initial court proceedings (*see* 32 AD3d 1216 [4th Dept 2006]), Supreme Court granted summary judgment to plaintiffs, concluding that the Town's decision to enact the ordinance restricting the preexisting nonconforming use that had been permitted under the special use variance violated the principle set forth in *Syracuse Aggregate* (51 NY2d 278 [1980]). The Appellate Division modified by denying summary judgment to plaintiffs and vacating the declaration in their favor (57 AD3d 1376 [4th Dept 2008]). The court held that the local law was applicable since the DEC permit covered only three acres and plaintiffs merely contemplated the future expansion of their operation.[2] We granted leave to appeal (13 NY3d 706 [2009]).

As a general rule, a nonconforming use of real property that exists at the time a restrictive zoning ordinance is enacted is " 'constitutionally protected and will be permitted to continue, notwithstanding the contrary provisions of the ordinance' " (*Glacial Aggregates*, 14 NY3d at 135, quoting *People v Miller*, 304 NY 105, 107 [1952]; *see e.g. Syracuse Aggregate*, 51 NY2d at 284). A party seeking to overcome a restrictive zoning ordinance "must demonstrate that the property was indeed used for the nonconforming purpose, as distinguished from a mere contemplated use, at the time the zoning ordinance became effective" (*Syracuse Aggregate*, 51 NY2d at 284-285). Where only part of a parcel has been used

---

1.  C & D landfills that exceed three acres are currently subject to more stringent DEC standards (*compare* 6 NYCRR 360-7.3, *with* 6 NYCRR 360-7.4).

2.  Supreme Court subsequently dismissed plaintiffs' cause of action alleging a regulatory taking.

for a nonconforming use, a landowner may seek protection for the remaining portion by demonstrating that the use is unique and adaptable to the entire parcel (*see id.* at 285) and showing that the landowner took "specific actions constituting an overt manifestation of its intent to utilize the property for the ascribed purpose" (*Buffalo Crushed Stone*, 13 NY3d at 98).

*Syracuse Aggregate*, *Buffalo Crushed Stone* and *Glacial Aggregates* all involved mining operations. We observed that mining, unlike other types of nonconforming uses, is unique in that it "contemplates the excavation and sale of the corpus of the land itself as a resource" (*Syracuse Aggregate*, 51 NY2d at 285). Thus, "as a matter of practicality as well as economic necessity, a quarry operator will not excavate his entire parcel of land at once, but will leave areas in reserve, virtually untouched until they are actually needed" (*id.*).

In connection with the need to hold land in reserve for future purposes directly related to the permitted use, we indicated in *Buffalo Crushed Stone* that a quarry owner "would not necessarily seek a permit for lands that it did not intend to excavate immediately, or at least not until sometime in the future" (13 NY3d at 101). Hence, we determined that it would be unreasonable to limit the boundaries of the vested right to just the area approved for mining under a DEC permit where the quarry owner demonstrated an intention to eventually use a larger area for such mining activities. We further explained that a contrary rule would "fail[ ] to consider the realities of the [mining] industry" and require "a very narrow reading of *Syracuse Aggregate*" (*id.*). In *Glacial Aggregates*, we reiterated that, although a mining permit is " 'strong evidence of a manifestation of intent' " to continue that nonconforming use, it is "not 'a prerequisite to establishing prior nonconforming use rights' " (*Glacial Aggregates*, 14 NY3d at 137-138, quoting *Buffalo Crushed Stone*, 13 NY3d at 101-102). Consequently, the primary issue in these mining cases was not whether the landowners acquired vested rights under their permits, but whether the towns had approved or allowed the nonconforming uses (*see Glacial Aggregates*, 14 NY3d at 136).

Here, we conclude that the C & D landfill in this case is sufficiently similar in nature to the quarries in *Syracuse*

*Aggregate, Buffalo Crushed Stone* and *Glacial Aggregates.*[3] "As opposed to other nonconforming uses in which the land is merely incidental to the activities conducted upon it" (*Syracuse Aggregate*, 51 NY2d at 285), the use of property as a landfill, like a mine, is unique because it necessarily envisions that the land itself is a resource that will be consumed over time. Additionally, the owner of landfill property can reasonably be expected to hold a portion of the land in reserve for future expansion of that activity, just as a quarry operator may find necessary. The fact that the DEC permit covered only a limited area is not determinative of plaintiffs' rights over the remaining 47 acres of the parcel (*see Buffalo Crushed Stone*, 13 NY3d at 101-102). Instead, the factors to examine are whether the operation of a C & D landfill was a lawful use on the property prior to the enactment of the 2005 zoning law and whether plaintiffs' activities before that time manifested an intent to utilize all of their property in a manner consistent with that purpose.

It is undisputed that the operation of a C & D landfill was a legal use on plaintiffs' 50-acre parcel before the 2005 zoning restriction became effective. In 1989, the Town had acknowledged that there was no other reasonable use for the property and granted plaintiffs a variance that covered all 50 acres. This not only established that the landfill was a lawful use, it also gave plaintiffs a measure of security that they would be able to use additional acreage for the landfill operation as the need arose so long as DEC continued to issue the appropriate permits for expanded operations. The evidence also shows that plaintiffs manifested an intent before 2005 to devote the 50-acre parcel to use as a landfill since they dedicated substantial areas around the actual landfill site for related purposes, purchased necessary heavy equipment (such as a bulldozer, a backhoe, an excavator, a loader and a dump truck), employed a dozen people, developed plans for multi-stage enlargement of the landfill and engaged in discussions with investors regarding future operations. On these facts, plaintiffs adequately demonstrated that they acquired a vested right to operate a C & D landfill on their entire parcel,

---

**3.** We note that the Appellate Division did not have the opportunity to consider either *Buffalo Crushed Stone* or *Glacial Aggregates* because both decisions were issued after its determination in this case.

subject to regulation by DEC, and that the 2005 local law could not extinguish their legal use of the land for that purpose.[4]

Accordingly, the judgment of Supreme Court appealed from and the order of the Appellate Division brought up for review should be reversed, with costs, and judgment granted to plaintiffs declaring in accordance with this opinion.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH and JONES concur; Judge PIGOTT taking no part.

Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.

---

4. In light of this determination, it is unnecessary for us to consider plaintiffs' remaining contentions.