■ In the Matter of EXETER BUILDING CORP. et al., Respondents, v TOWN OF NEWBURGH et al., Appellants. [980 NYS2d 154]—

In a hybrid proceeding pursuant to CPLR article 78, inter alia, to review a determination of the Town of Newburgh Zoning Board of Appeals dated November 24, 2009, made after a hearing, that Exeter Building Corp. and 17K Newburgh, LLC, have no vested right to develop certain real property under the R-3 zoning regulations in effect prior to March 6, 2006, and action for a judgment declaring that Exeter Building Corp. and 17K Newburgh, LLC, have a vested right to develop the real property in accordance with those prior zoning regulations, the appeal is from so much of an order and judgment (one paper) of the Supreme Court, Orange County (Slobod, J.), dated October 7, 2011, as, after a hearing, inter alia, granted that branch of the petition which was to review the determination that Exeter Building Corp. and 17K Newburgh, LLC, have no vested right to develop the property under those prior zoning regulations and declared that Exeter Building Corp. and 17K Newburgh, LLC, have a vested right to develop the property in accordance with those prior zoning regulations.

Ordered that the order and judgment is reversed insofar as

appealed from, on the law, with costs, the determination is confirmed, that branch of the petition which was to review the determination that Exeter Building Corp. and 17K Newburgh, LLC, have no vested right to develop the property under the R-3 zoning regulations in effect prior to March 6, 2006, is denied, and the matter is remitted to the Supreme Court, Orange County, for the entry of an amended judgment, inter alia, dismissing the proceeding on the merits and declaring that Exeter Building Corp. and 17K Newburgh, LLC, have no vested right to develop the subject real property under the R-3 zoning regulations in effect prior to March 6, 2006.

In December 2000, the petitioners/plaintiffs, Exeter Building Corp. (hereinafter Exeter) and 17K Newburgh, LLC (hereinafter together the plaintiffs), became the owners of a parcel of approximately 29 acres of real property in the Town of Newburgh. The property was within the Town's R-3 zoning district, which permits multi-family housing. In 2002 the plaintiffs applied to the Town of Newburgh Planning Board (hereinafter the Planning Board) for approval of a site plan for a proposed project to be known as Madison Green that was to consist of 34 residential buildings, each containing four single-family units, for a total of 136 units. Exeter was aware that final approval of the site plan for Madison Green could not be obtained until a sewer moratorium then in effect was lifted. Exeter acknowledged in a May 2002 letter to the Planning Board that it was pursuing the approval of the site plan for Madison Green at its own risk.

Meanwhile, the Town was engaged in a rezoning effort. In April 2001, it had commissioned the preparation of a draft comprehensive plan, and an initial draft was completed that month. The initial draft did not include a proposal to change the R-3 zoning of the plaintiffs' property.

Over the course of several years, as the Town refined its draft comprehensive plan, the plaintiffs appeared before the Planning Board in furtherance of the final approval of the site plan for Madison Green. In December 2003, during the approval process, a consultant to the Planning Board recommended, for several reasons, that the plaintiffs adjust a boundary line between their property and an adjoining property. Accordingly, the plaintiffs commenced negotiations with the owner of that adjoining property.

In the summer of 2005, the Town's planning consultant recommended that the Town revise the draft comprehensive plan to include a change of the zoning of various properties, including the plaintiffs' property, from R-3 to R-1, a more restrictive category. The chairperson of the Planning Board

warned the plaintiffs in a letter that adoption of the proposed change to the draft comprehensive plan would "directly affect" the final approval of the site plan for Madison Green in that development of Madison Green would not be permissible under R-1 zoning. The chairperson cautioned the plaintiffs that their continued efforts to develop Madison Green would be at their own risk. The chairperson assured the plaintiffs that, in the event that they chose to move forward, the Planning Board would continue its review in a "timely fashion." In August 2005, the Town Board voted to include the revision in the draft comprehensive plan.

That summer, after successful negotiations for an exchange of land with an adjoining property owner, the plaintiffs submitted a proposal for a boundary adjustment to their property. In October, the Planning Board approved the boundary adjustment, and the approval was filed on January 24, 2006. Review of the site plan for Madison Green proceeded, but on March 6, 2006, the Town Board enacted its comprehensive plan as Local Law No. 3 (2006) of Town of Newburgh (hereinafter Local Law 3), and the plaintiffs' property was rezoned from R-3 to R-1.

The plaintiffs commenced legal proceedings against the Town, its Planning Board, and the Town's Building Inspector, seeking invalidation of Local Law 3 and a declaration that they have vested rights, under both statute and common law, to develop Madison Green under the R-3 zoning regulations. In November 2006, the Supreme Court issued an order invalidating Local Law 3, but also declaring that the plaintiffs did not have vested rights to develop Madison Green under the R-3 zoning regulations. The plaintiffs appealed, and the Town and its Building Inspector cross-appealed from that order.

In June 2007, while the appeals were pending, the plaintiffs received preliminary site plan approval for Madison Green, subject to numerous conditions. The next month, the Town's code compliance department granted the plaintiffs a permit authorizing the demolition of a single-family residence on the property, and the plaintiffs demolished the residence. Additionally, on December 20, 2007, the Planning Board passed a "Resolution of Approval Site Plan Final" (hereinafter the Resolution) with respect to Madison Green, upon the plaintiffs' satisfaction of certain conditions. The Resolution stated, in relevant part, that "THE PLANNING BOARD RESOLVES to approve this Site Plan as said proposal is depicted on the plans identified above upon the conditions outlined below, and the Chairperson . . . is authorized to sign the plans upon satisfaction of those conditions below noted to be conditions precedent to signing."

The Resolution contained 18 specific conditions, 11 of which were required to be met before the chairperson of the Planning Board would be authorized to sign the plans. From the submission in 2002 of their application for approval until the Resolution was approved, the plaintiffs had incurred $358,999.73 in engineering and review costs.

Four months later, in March 2008, this Court decided the appeal and the cross appeal (*see Matter of Exeter Bldg. Corp. v Town of Newburgh*, 49 AD3d 731, 733-734 [2008]). This Court upheld Local Law 3 and agreed with the Supreme Court that the plaintiffs had not established that they have a vested right under the common law to proceed with Madison Green under the R-3 zoning regulations. Nonetheless, we also held that the boundary adjustment that the plaintiffs had negotiated with an adjoining property owner, and which the Town approved, constituted a subdivision under Town Law § 276 (4) (a) and Town of Newburgh Code § 163-2. The effect of this subdivision was to give the plaintiffs a three-year exemption from the rezoning of their property (*see* Town Law § 265-a). During that exemption period, the plaintiffs were entitled to proceed with the approval process in order to establish a vested right under the common law to build Madison Green under the R-3 zoning regulations. The parties agree that the exemption period began on January 24, 2006, and ended on January 24, 2009. As of the date of our decision and order, approximately 10 months were left in the three-year exemption period.

In April 2008, the plaintiffs obtained a permit to remove water tanks on property adjoining the subject property, and they removed the tanks and their foundation. In June 2008, the plaintiffs applied for a clearing and grading permit. The Planning Board approved the permit in July 2008, and in August 2008, the code compliance department issued the permit. The plaintiffs performed clearing and grading on the property, including the installation of 170 feet of underground pipe. The Town advised the plaintiffs that the installation of the pipe was not authorized by the permit. In October 2008, the code compliance department issued a permit to the plaintiffs authorizing erection of signs on the property advertising new townhouses. In all, from the Planning Board's approval of the Resolution in December 2007, to the expiration of the three-year exemption period in January 2009, the plaintiffs incurred $46,581.73 in engineering and review costs, and $135,199.24 in construction costs, for a total cost during that period of $181,780.97. It is undisputed that many of the conditions set forth in the Resolution had not been complied with by the plaintiffs when the statutory exemption period ended in January 2009.

In April 2009, the plaintiffs sought to amend the site plan, but the code enforcement officer at the code compliance department wrote to the Planning Board indicating that the three-year exemption period under Town Law § 265-a had expired and that the subject property was now subject to the R-1 zoning requirements. Therefore, the Planning Board disapproved the amended site plan. The plaintiffs appealed to the Town's Zoning Board of Appeals (hereinafter the ZBA), but, after a hearing, the ZBA upheld the Planning Board's determination that the plaintiffs had not established a vested right under the common law to develop Madison Green under the R-3 zoning regulations. In its written decision dated November 24, 2009, the ZBA concluded that, inasmuch as the plaintiffs had not satisfied all the conditions in the Resolution, they were not entitled to have the chairperson sign the site plan and, thus, were not entitled to the issuance of a building permit under the site plan. The ZBA also rejected the plaintiffs' contention that the permits already issued with respect to demolition, erection of a sign, and clearing and grading could, in the absence of a building permit authorizing construction of Madison Green under the site plan, satisfy the first prerequisite for a claim of common-law vesting.

The plaintiffs commenced this hybrid proceeding and action against the Town, the members of the Town Board, the Planning Board, the ZBA and its members, and the Town Code enforcement officer (hereinafter collectively the defendants) seeking, among other things, to annul the ZBA's determination and a judgment declaring that the plaintiffs have a vested right under the common law to develop Madison Green under the R-3 zoning regulations. After a hearing, the Supreme Court issued an order and judgment, inter alia, granting that branch of the petition which sought to annul the determination and declaring that the plaintiffs have a vested right to develop Madison Green under the R-3 zoning regulations.

Zoning, which is an exercise of the "police powers" (see *Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 683-684 [1996]; *Matter of 440 E. 102nd St. Corp. v Murdock*, 285 NY 298, 304 [1941]; *Matter of Cobleskill Stone Prods., Inc. v Town of Schoharie*, 95 AD3d 1636, 1637 [2012]), restricts the use of real property (see *Lutheran Church in Am. v City of New York*, 35 NY2d 121, 128 [1974]; *People v Miller*, 304 NY 105, 108 [1952]). The doctrine of vested rights is implicated when a property owner seeks to continue to use property, or to initiate the use of property, in a way that was permissible before enactment or amendment of a zoning ordinance but would not be permitted under a new zoning law (see *People v Miller*, 304 NY

at 108; *see generally* 4 Ziegler, Rathkopf's Law of Zoning and Planning, § 70:1 [4th ed 2011]). In those situations, the right of the property owner is to be balanced against the right of the public to enforce the zoning law (*see Glacial Aggregates LLC v Town of Yorkshire*, 14 NY3d 127, 135 [2010]; *People v Miller*, 304 NY at 108-109; *Matter of Cobleskill Stone Prods., Inc. v Town of Schoharie*, 95 AD3d at 1638; *Matter of Putnam Armonk v Town of Southeast*, 52 AD2d 10, 15 [1976]).

Generally, "nonconforming uses or structures, in existence when a zoning ordinance is enacted, are . . . constitutionally protected and will be permitted to continue, notwithstanding the contrary provisions of the ordinance" (*People v Miller*, 304 NY at 107; *see Jones v Town of Carroll*, 15 NY3d 139, 143 [2010]; *Glacial Aggregates LLC v Town of Yorkshire*, 14 NY3d 127 at 135 [2010]; *Matter of Syracuse Aggregate Corp. v Weise*, 51 NY2d 278, 284 [1980]). By contrast, rezoning may restrict new uses of the property (*see Matter of Pete Drown, Inc. v Town Bd. of Town of Ellenburg*, 229 AD2d 877, 879 [1996]; *cf. Rocky Point Drive-In, L.P. v Town of Brookhaven*, 21 NY3d 729 [2013]). The intermediate situation, in which the use of property is in transition when the new zoning is adopted, is at the heart of most disputes regarding the common-law doctrine of vested rights. The common-law doctrine has been characterized as "one of the most troublesome areas of land use regulation" (4 Ziegler, Rathkopf's Law of Zoning and Planning, § 70:1 at 70-3 [4th ed 2011]).

"In New York, a vested right can be acquired when, pursuant to a legally issued permit, the landowner demonstrates a commitment to the purpose for which the permit was granted by effecting substantial changes and incurring substantial expenses to further the development" (*Town of Orangetown v Magee*, 88 NY2d 41, 47 [1996]; *see Matter of RC Enters. v Town of Patterson*, 42 AD3d 542, 544 [2007]; *Matter of Lefrak Forest Hills Corp. v Galvin*, 40 AD2d 211, 218 [1972], *affd* 32 NY2d 796 [1973], *cert denied sub nom. Baum v Lefrak Forest Hills Corp.*, 414 US 1004 [1973]; *Matter of Fox Lane Corp. v Mann*, 216 App Div 813, 813 [1926], *affd* 243 NY 550 [1926]). "Neither the issuance of a permit . . . nor the landowner's substantial improvements and expenditures, standing alone, will establish the right. The landowner's actions relying on a valid permit must be so substantial that the municipal action results in serious loss rendering the improvements essentially valueless" (*Town of Orangetown v Magee*, 88 NY2d at 47-48; *see Glacial Aggregates LLC v Town of Yorkshire*, 14 NY3d at 136; *People v Miller*, 304 NY at 109; *Matter of RC Enters. v Town of Patterson*, 42 AD3d

at 544; *People ex rel. Publicity Leasing Co. v Ludwig*, 172 App Div 71, 73-74 [1916], *affd* 218 NY 540, 542 [1916]).

"Reliance" is an essential element of the doctrine (*Glacial Aggregates LLC v Town of Yorkshire*, 14 NY3d at 136-137). Although many cases speak in terms of reliance on permits (*see e.g. Town of Orangetown v Magee*, 88 NY2d at 47; *Matter of RC Enters. v Town of Patterson*, 42 AD3d at 544), a right may vest in certain situations when "subdivisions" have been given a "final grant of approval" (*Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals of Inc. Vil. of New Hempstead*, 152 AD2d 365, 373 [1989], *affd* 77 NY2d 114 [1990]). Whether a planning board's final unconditional approval of a *site plan* may, even in the absence of a building permit, satisfy the first prong of the test has not been settled in New York (*cf. Figgie Intl. v Town of Huntington*, 203 AD2d 416, 418-419 [1994]; *but cf. 202 Devs. v Town of Haverstraw*, 175 AD2d 473 [1991]), and it is not before us now.

The plaintiffs placed the issue of common-law vesting directly before the ZBA, which had the authority to determine the claim (*see Matter of Estate of Kadin v Bennett*, 163 AD2d 308, 309 [1990]). The ZBA's determination must be upheld unless it "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; *see Matter of Mar-Vera Corp. v Zoning Bd. of Appeals of the Vil. of Irvington*, 84 AD3d 1238, 1240 [2011]). The ZBA's determination was neither arbitrary and capricious nor an abuse of discretion. Even if a property owner may claim vested rights in reliance on an unconditional final approval of a site plan, it is undisputed that the Planning Board never granted unconditional approval of the plaintiffs' site plan. Indeed, since the plaintiffs did not fulfill the conditions precedent that were delineated in the Resolution, the chairperson was not authorized to sign the site plan. Accordingly, the plaintiffs could not establish that they had vested rights to develop Madison Green under the Resolution.

Further, the plaintiffs may not ground a claim of common-law vesting upon reliance on the limited permits that were issued to them. None of those permits—which authorized demolition of the single-family house and the water tanks, erection of a sign, and regrading and clearing—either singly or together amounted to the Town's approval of Madison Green. Thus, the plaintiffs' expenditures and construction in reliance on those limited permits could not satisfy the prerequisite for common-law vesting of the right to construct the entire project. At most, the limited permits authorized the plaintiffs to complete the work

described in the permits themselves, which, if undertaken, would leave the subject property in a condition amenable to development under the new, more restrictive R-1 zoning regulations.

Accordingly, the ZBA's determination should have been confirmed, and the Supreme Court should have declared that the plaintiffs do not have a vested right to develop the property under the R-3 zoning regulations.

In light of our determination, we need not address the defendants' remaining contentions. Mastro, J.P., Skelos, Balkin and Leventhal, JJ., concur.