Matter of Cobleskill Stone Prods., Inc. v Town of Schoharie (2023 NY Slip Op 06414)

Matter of Cobleskill Stone Prods., Inc. v Town of Schoharie

2023 NY Slip Op 06414

Decided on December 14, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 14, 2023

534981
[*1]In the Matter of Cobleskill Stone Products, Inc., Appellant-Respondent,
v
Town of Schoharie et al., Respondents-Appellants. (And Another Related Proceeding.)

Calendar Date:October 17, 2023

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and Powers, JJ.

Fogel & Brown, PC, Syracuse (Michael A. Fogel of counsel), for appellant-respondent.
Young/Sommer LLC, Albany (Kristin Carter Rowe of counsel), for respondents-appellants.

Fisher, J.
Cross-appeals from an order of the Supreme Court (James H. Ferreira, J.), entered February 22, 2022 in Schoharie County, which, in two combined proceedings pursuant to CPLR article 78 and actions for declaratory judgment, among other things, denied petitioner's motion for summary judgment.
This matter is familiar and the underlying facts and procedural history are fully set forth in this Court's prior decisions (173 AD3d 1509 [3d Dept 2019]; 169 AD3d 1182 [3d Dept 2019]; 126 AD3d 1094 [3d Dept 2015]; 112 AD3d 1024 [3d Dept 2013]; 95 AD3d 1636 [3d Dept 2012]). Relevantly, petitioner owns a quarry that has been operating since the 1890s in the Town of Schoharie, Schoharie County. In 1975, respondent Town of Schoharie (hereinafter respondent) enacted a zoning ordinance covering the area of the quarry, allowing commercial excavation or mining upon receipt of a special use permit. As a prior nonconforming use, the quarry did not need a special use permit and could continue to operate within its original borders. However, when the quarry expanded through the purchase of adjoining property in the 1990s, petitioner was required to, and did, obtain a special use permit. In doing so, in order to mine the new parcels, petitioner relocated Rickard Hill Road to its southern-most boundary and dedicated the road to the county.
Petitioner subsequently purchased two additional parcels south of the road but did not apply for a special use permit when either parcel was purchased. Instead, in January 2005, petitioner sought to amend its Department of Environmental Conservation (hereinafter DEC) mining permit to include these previously unmined reserves in these southern parcels (hereinafter southern reserves). While this application was pending, respondent adopted Local Law No. 2 (2005) of the Town of Schoharie (hereinafter Local Law No. 2), which, among other things, prohibited commercial mining within the zoning district where the southern reserves are located. Petitioner then commenced a combined CPLR article 78 proceeding and declaratory judgment action (hereinafter the first proceeding), seeking, via its eighth cause of action, "a declaration that it has secured vested rights to quarry the [s]outhern [r]eserves as a pre-existing nonconforming use under Local Law No. 2[ ]." Petitioner subsequently moved for partial summary judgment on such ground, and, in a May 2012 decision, this Court found that there were genuine issues of fact as to whether petitioner established its vested rights before the enactment of Local Law No. 2 (95 AD3d at 1638). Thereafter, following the completion of discovery, respondent also moved for partial summary judgment on the same "vested rights" cause of action, specifically arguing that petitioner could not establish a vested right to mine the southern reserves based on its prior nonconforming use because it never sought or obtained a special use permit for those parcels pursuant to the 1975 zoning ordinance; this Court rejected that argument [*2](126 AD3d at 1096). However, during the pendency of that appeal, Supreme Court (Devine, J.) adjudged Local Law No. 2 to be null and void for noncompliance with certain procedural requirements, reviving the 1975 ordinance by operation of law (see 169 AD3d at 1183; 126 AD3d at 1095 n 1).
In March 2014, approximately a month after Local Law No. 2 was struck down, petitioner applied for a special use permit for the southern reserves pursuant to the 1975 ordinance. However, in April 2014, respondent imposed a moratorium on special use permits for mining and did not hear the application — subsequently enacting Local Law No. 3 (2015) of the Town of Schoharie (hereinafter Local Law No. 3), effective December 2015, which again prohibited commercial mining and excavation in the southern reserves. Thereafter, petitioner commenced a separate combined CPLR article 78 proceeding and declaratory judgment action (hereinafter the second proceeding), seeking, via its third cause of action, "a declaration that it has secured a vested and nonconforming use right to mine the [southern reserves] . . . as a pre-existing nonconforming use under Local Law No. 3." The first proceeding and the second proceeding were joined for the purposes of discovery and trial. Petitioner then moved for summary judgment on its eighth cause of action in the first proceeding and its third cause of action in the second proceeding — by then regarded by petitioner as its "prior nonconforming use causes of action," and respondent cross-moved for summary judgment dismissing the same claims. Supreme Court (Ferreira, J.) denied both the motion and the cross-motion, holding, among other things, that questions of fact precluded summary judgment in favor of either party, including those identified by this Court in its May 2012 decision.[FN1] These cross-appeals ensued.
We affirm. Although disfavored, "prior nonconforming uses in existence when a zoning ordinance is adopted are, generally, constitutionally protected even though an ordinance may explicitly prohibit such activity" (Buffalo Crushed Stone, Inc. v Town of Cheektowaga, 13 NY3d 88, 97 [2009]; see Matter of Toys R Us v Silva, 89 NY2d 411, 417 [1996]). As it specifically relates to quarrying, a prior nonconforming use "cannot be limited to the land actually excavated at the time of enactment of the restrictive ordinance" (Matter of Syracuse Aggregate Corp. v Weise, 51 NY2d 278, 286 [1980]), since quarrying constitutes a "unique" use of land and, "as a matter of practicality as well as economic necessity, a quarry operator will not excavate his [or her] entire parcel of land at once, but will leave areas in reserve, virtually untouched until they are actually needed" (Jones v Town of Carroll, 15 NY3d 139, 144 [2010] [internal quotation marks and citation omitted]; see Matter of Cobleskill Stone Prods., Inc. v Town of Schoharie, 169 AD3d at 1184). Thus, "[a] landowner who engages in substantial quarrying activities within its property and demonstrates [*3]an intention to do so in other portions of the land may sufficiently establish a prior nonconforming use extending to the boundaries of that property, notwithstanding the fact that quarrying may not have actually begun in that specific area" (Matter of Town of Southampton v New York State Dept. of Envtl. Conservation, 39 NY3d 201, 212 [2023] [internal quotation marks, emphasis and citation omitted]; see Matter of Subdivisions, Inc. v Town of Sullivan, 75 AD3d 978, 980-981 [3d Dept 2010]). What constitutes "substantial quarrying activities" does not include "a few self-serving acts of a very limited nature" (Matter of Syracuse Aggregate Corp. v Weise, 51 NY2d at 286), "[a]nd a party advancing a prior nonconforming use exception to a zoning ordinance must establish specific actions constituting an overt manifestation of its intent to utilize the property for an ascribed purposed [e.g., mining] at the time the zoning ordinance became effective" (Glacial Aggregates LLC v Town of Yorkshire, 14 NY3d 127, 138 [2010] [internal quotation marks, brackets and citation omitted]; see Jones v Town of Carroll, 15 NY3d at 145).[FN2] However, even where nonconforming uses are permitted to continue, "they may not be enlarged as a matter of right" (Matter of Rudolf Steiner Fellowship Found. v De Luccia, 90 NY2d 453, 458 [1997]), and such right therefore cannot "extend to adjoining parcels separated by physical boundaries" (Buffalo Crushed Stone, Inc. v Town of Cheektowaga, 13 NY3d at 99).
At the time of our May 2012 decision finding issues of fact, our inquiry was limited as to what actions petitioner had undertaken prior to the enactment of Local Law No. 2 in 2005 (95 AD3d at 1638-1639). Since our holding in 2012, Local Law No. 2 has been adjudged null and void, therefore allowing petitioner to expand its proffer to the efforts that it made from 2005 through the enactment of Local Law No. 3 in December 2015 (see 169 AD3d at 1185; see also 173 AD3d at 1511). Despite this, and the voluminous submissions made before the court, petitioner offered limited details as to what further actions were performed during this expanded time period — let alone "substantial quarrying activities" — so as to differentiate itself from where it was back in May 2012 (Matter of Town of Southampton v New York State Dept. of Envtl. Conservation, 39 NY3d at 212). For similar reasons, this proffer also fails to demonstrate, as a matter of law, an overt manifestation of its intent to mine the southern reserves (see Glacial Aggregates LLC v Town of Yorkshire, 14 NY3d at 138; see also Jones v Town of Carroll, 15 NY3d at 145).
Indeed, petitioner's updated affidavits in support of its motion are a recasting of its previous conduct, largely echoing its efforts that were made prior to the enactment of Local Law No. 2 — which was considered by this Court in 2012 within the context of the first proceeding. To the extent that some of petitioner's activities extended beyond the enactment of Local Law No. [*4]2, upon closer inspection, these actions were a corollary of the work that had started prior to the enactment of the zoning ordinance, notably the work completed on the draft environmental impact statement. The record still demonstrates that the southern reserves are comprised of two parcels, with the earliest being purchased in 1981, and that it was not until 1992 when the suitability for mining that parcel and the subsequently-purchased second parcel was discussed with a geology consultant. Notably, after the geology of the second parcel was examined and later purchased in 2000, therefore joining the two parcels into the southern reserves, it was not until 2004 that petitioner sought to compile an application with the DEC to expand its mining operations; the invoice to the geology consultant states that such application was "to protect vested rights."
To the extent that petitioner contends that it was not able to complete certain mining activities in the southern reserves that were illustrative of an intent to mine during the expanded time period (see Matter of Cobleskill Stone Prods., Inc. v Town of Schoharie, 95 AD3d at 1638), we are mindful that, by enacting a mortarium on mining permits and by declining to hear petitioner's special use permit application submitted after Local Law No. 2 was struck down and before Local Law No. 3 took effect, respondent was able to self-create a tactical advantage limiting what activities petitioner could engage in on the southern reserves. However, the record still fails to indicate other conduct that was undertaken by petitioner that did not require a permit, as even petitioner's treasurer testified that he was never asked to complete any financial projections for the expansion into the southern reserves or to calculate the costs of construction or moving structures or equipment — conduct that is unaffected by respondent's mortarium. As Supreme Court observed, this Court's May 2012 decision is binding precedent, and we perceive no reason to deviate from such holding based upon the record before us. Based on the foregoing, petitioner's motion for summary judgment was properly denied (see Matter of Cobleskill Stone Prods., Inc. v Town of Schoharie, 95 AD3d at 1639; Preble Aggregate v Town of Preble, 263 AD2d 849, 851 [3d Dept 1999], lv denied 94 NY2d 760 [2000]).
Supreme Court also properly denied respondent's cross-motion. Respondent's argument that Rickard Hill Road entitles it to summary judgment as a matter of law on its prior nonconforming use claim is misplaced. Even though a prior nonconforming use cannot extend to adjoining parcels separated by physical boundaries, "the mere fact that a roadway runs through a portion of a property . . . is not a per se barrier to the recognition of prior nonconforming use rights to that area" (Buffalo Crushed Stone, Inc. v Town of Cheektowaga, 13 NY3d at 101). Although there are differences between the nature of Rickard Hill Road and Indian Road in Buffalo Crushed Stone[*5], and further noting that the road is now owed by the county and that petitioner would need to develop a tunnel system that could take up to a year to complete to avoid the road, the record fails to adequately demonstrate that the road "create[s] a physical separation of the land, divesting it of its character so as to prevent a vested right to use that land for its intended purpose" (id.). Indeed, the expert opinions offered by each party dispute whether Richard Hill Road — a two-lane, double-yellow line, shouldered and paved roadway with a 100-foot right-of-way — constitutes a physical barrier. Moreover, petitioner previously had partially built one of the ramps that would be needed to begin the process of crossing the road and drilled several holes in the southern reserves to both analyze the rock within it and monitor its water table. In addition, petitioner applied for a modification of its mining permit with the DEC to include the southern reserves, and subsequently submitted an application for a special use permit to respondent. When viewed in a light most favorable to the nonmovant, petitioner has raised a question of fact as to whether it demonstrated an overt manifestation of its intent to mine the southern reserves (see id.; Matter of Subdivisions, Inc. v Town of Sullivan, 75 AD3d at 981; see also Matter of Cobleskill Stone Prods., Inc. v Town of Schoharie, 126 AD3d at 1095). The remaining contentions of the parties have been examined and found to be lacking merit or rendered academic.
Garry, P.J., Lynch, Reynolds Fitzgerald and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Relevantly, Supreme Court denied both the motion and the cross-motion, concluding that the parties' successive applications for summary judgment in the first proceeding were inappropriate in the absence of new evidence since this Court's May 2012 decision and, for similar reasons, the parties' proof failed to demonstrate entitlement to judgment as a matter of law with respect to the second proceeding.

Footnote 2: Although the motion, cross-motion and order presently before us focus on evidence of petitioner's alleged prior nonconforming use, for completeness, we note that continuation of an existing nonconforming land use after enactment of a zoning ordinance is sometimes pleaded as a "vested right," based on the ground that the owner has secured a vested right in the particular use, "which is but another way of saying that the property interest affected by the particular ordinance is too substantial to justify its deprivation in light of the objectives to be achieved by enforcement of the provision" (Glacial Aggregates LLC v Town of Yorkshire, 14 NY3d at 135 [internal quotation marks and citation omitted]; see Buffalo Crushed Stone, Inc. v Town of Cheektowaga, 13 NY3d at 97; Preble Aggregate v Town of Preble, 263 AD2d 849, 851 [3d Dept 1999], lv denied 94 NY2d 760 [2000]). Unlike establishing a property right based upon a prior nonconforming use, "the doctrine of vested rights is partly grounded in equitable estoppel principles" (Matter of Cobleskill Stone Prods., Inc. v Town of Schoharie, 169 AD3d at 1186; see Matter of Bartz v Village of LeRoy, 159 AD3d 1338, 1341 [4th Dept 2018]). No equitable factors are at issue on this appeal.