██ In the Matter of the Estate of GLADYS JOHNSON MOAK, Deceased. DIANE JOHNSON WARD, as Executor of GLADYS JOHNSON MOAK, Deceased, Respondent; JAMES R. MOAK et al., Respondents; and RALPH H. DRAKE et al., Appellants. [938 NYS2d 648]—

Egan Jr., J.

Initially, we have no quarrel with Surrogate's Court's decision to pierce the corporate veil and hold Drake personally liable for the corporate debts incurred by RHD and/or Woodfield. Contrary to respondents' assertion, "an attempt . . . to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners" (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141 [1993]; *see Sugar Foods De Mexico v Scientific Scents, LLC*, 79 AD3d 1551, 1552 [2010]). As our review of the underlying petition reveals facts sufficient "to give the court and parties notice of the transactions [or] occurrences . . . intended to be proved" (CPLR 3013), respondents' argument on this point must fail.

Further, the record before us contains ample evidence that

Drake "exercised complete domination over [RHD and/or Woodfield] in the transaction[s] at issue and, in doing so, abused the privilege of doing business in the corporate form, thereby perpetrating a wrong that resulted in injury to [decedent]" (*East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*, 66 AD3d 122, 126 [2009], *affd* 16 NY3d 775 [2011]; *see Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d at 141-142). In this regard, Drake's own testimony, together with the related documentary evidence, reveals a pervasive pattern of "commingling of assets . . . and use of corporate funds for personal use" (*East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*, 66 AD3d at 127 [internal quotation marks and citation omitted]). Under these circumstances, we cannot say that Surrogate's Court erred in piercing the corporate veil and imposing personal liability upon Drake for RHD and/or Woodfield's indebtedness to decedent.

Before addressing the particular causes of action upon which petitioner prevailed, we note that although this Court indeed is vested with "broad authority in a nonjury trial to independently weigh the evidence and render [the] determination warranted by the record, we will defer to the trial court's assessment of credibility issues given [its] ability to observe the witnesses' demeanor during testimony" (*Matter of Curtis*, 83 AD3d 1182, 1183 [2011] [internal quotation marks and citations omitted]). Here, Drake and Moak presented divergent accounts of the circumstances under which decedent's funds ultimately found their way into RHD's checking account. Moak, believing that he and Drake had an "understanding" that they "would be building the houses together," insisted that he prevailed upon decedent to extend a loan to RHD/Woodfield at Drake's behest and based upon Drake's representation that such loan would be repaid in short order. Drake, on the other hand, steadfastly maintained that Moak—and Moak alone—borrowed money from decedent that he thereafter elected—of his own volition—to invest in the subdivision project. Surrogate's Court discounted Drake's version of the underlying transactions and, based upon our review of the record as a whole, we discern no basis upon which to disturb that credibility determination on appeal.

Turning to the specific causes of action at issue, although we agree with respondents that there is insufficient evidence to sustain Surrogate's Court's finding of fraud,[7] the record is replete with evidence to support petitioner's remaining causes

---

7. Surrogate's Court found that Drake, by executing certain checks in favor of decedent and instructing Moak not to cash them, "engaged in a scheme that fraudulently induced [decedent] into loaning him additional

of action for constructive trust, unjust enrichment, implied contract and restitution—all of which essentially distill to a cause of action for moneys had and received (see Matter of Witbeck, 245 AD2d 848, 850 [1997]). In this regard, a cause of action for moneys had and received is established when "(1) the defendant receive[s] money belonging to [the] plaintiff, (2) the defendant benefit[s] from receipt of the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money" (id. [internal quotation marks and citation omitted]; see State of New York v International Asset Recovery Corp., 56 AD3d 849, 852 [2008]).

Here, it is uncontroverted that funds originating from decedent and totaling $162,000 were deposited into RHD's checking account between September 1995 and April 1996, and it is equally clear that Drake and his corporate entities benefitted from the receipt of these funds, which were used, at least in part, to cover outstanding insurance bills, payroll taxes and the costs associated with getting the infrastructure in place for the subdivision. Additionally, despite Drake's protestations to the contrary, there is ample proof in the record—including the notations contained on the checks from RHD to decedent, the manner in which decedent's funds were recorded in RHD's books and the assignment made by Drake to Moak in 1998 conveying his share of the profits on the project "until such time as the [moneys] invested by [decedent] have been repaid"—to estab-

[moneys]." In this regard, we have no quarrel with the proposition that Drake's repeated execution of checks in favor of decedent at a point in time when he knew (or should have known by virtue of his status as the sole corporate officer) that there were insufficient funds to cover the tenders in question evidenced a material representation and knowledge of its falsity, and it is equally clear that decedent sustained damages as a result thereof (see generally Maki v Bassett Healthcare, 85 AD3d 1366, 1369 [2011] [elements of fraud], appeal dismissed 17 NY3d 855 [2011], lv denied and dismissed 18 NY3d 870 [2012]; Societe Generale Alsacienne De Banque, Zurich v Flemingdon Dev. Corp., 118 AD2d 769, 773 [1986] [drawing of checks with the knowledge that there were insufficient funds to cover them constitutes "actionable fraud"]; A. Sam & Sons Produce Co. v Campese, 14 AD2d 487, 487 [1961] ["drawing of checks without funds to meet them, when unexplained, is a badge of fraud"]). Where petitioner's proof—and the court's findings—fall short, in our view, is with respect to the element of reliance. Both Moak and Drake testified that Drake never had any contact—either orally or in writing—with decedent. And while petitioner points to the transaction history between decedent and respondents—as delineated by the checks deposited into and drawn on RHD's bank account—as evidence of fraudulent inducement, i.e., tendering partial payments to decedent in an effort to procure additional funds, we find such proof to be inconclusive—particularly in view of the fact that decedent continued to write checks to RHD long after it became (or should have become) apparent that RHD's checks to her were not clearing.

lish that the funds received from decedent and deposited into RHD's bank account were in fact a loan to respondents and, more to the point, that Drake, by his conduct, acknowledged as much. The record further reflects that, with the exception of $1,500, respondents thereafter failed to repay decedent. Under these circumstances, we agree that equity dictates that decedent's estate be reimbursed for the remaining funds due.

As a final matter, respondents correctly note that Surrogate's Court erred in failing to address both their motion for a default judgment, which was made at the start of trial, and the merits of their cross claim against Moak for contribution and/or indemnification and, accordingly, we remit this matter to Surrogate's Court for this purpose. Respondents' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, J.P., Rose, McCarthy and Garry, JJ., concur. Ordered that the decree is affirmed, with costs, and matter remitted to the Surrogate's Court of Albany County for further proceedings not inconsistent with this Court's decision.