*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 11, 2015                    518890
_____

MICHAEL LYNCH,
                    Respondent,

        v                                   MEMORANDUM AND ORDER

WILLIAM CARLOZZI JR.,
                    Appellant.
_____

Calendar Date:  April 30, 2015

Before:  Lahtinen, J.P., Garry, Egan Jr. and Rose, JJ.

                    _____


        Carter, Conboy, Case, Blackmore, Maloney & Laird, PC,
Albany (Jessica A. Desany of counsel), for appellant.

        O'Connell & Aronowitz, PC, Albany (Stephen R. Coffey of
counsel), for respondent.


                    _____


Lahtinen, J.P.

        Appeal from an order and an amended order of the Supreme
Court (Krogmann, J.), entered February 19, 2014 and April 4, 2014
in Warren County, which, among other things, denied defendant's
motion for summary judgment dismissing the complaint.

        Plaintiff sustained a brain injury in August 1991 when,
while a pedestrian, he was struck by a vehicle operated by
defendant.  A few months later, in November 1991, plaintiff met
with an insurance adjuster and executed a release in exchange for
$5,000.  However, he commenced this personal injury action in
September 1999.  Defendant moved for summary judgment dismissing
the action asserting as defenses both the release and the statute
of limitations.  Supreme Court (Moynihan Jr., J.) granted the
motion, but this Court reversed finding triable issues as to

whether plaintiff lacked capacity to execute the release and suffered from a mental disability sufficient to toll the statute of limitations (284 AD2d 865 [2001]). Following a series of protracted delays, a hearing was conducted in 2011 that included, among other things, testimony by several experts and the introduction of voluminous records regarding plaintiff. A motion to limit certain expert testimony and a dispute regarding the admissibility of some of plaintiff's records resulted in an appeal, which we dismissed (121 AD3d 1308 [2014]). In 2014, Supreme Court (Krogmann, J.) denied defendant's motion for summary judgment, holding that plaintiff had established that he lacked capacity to execute the release and suffered from a mental disability sufficient to toll the statute of limitations. Defendant appeals.

With respect to the release signed by plaintiff, "the burden of proving incompetence rests upon the party asserting incapacity to enter into an agreement [and], to prevail, plaintiff was required to establish that [his] 'mind was so affected as to render [him] wholly and absolutely incompetent to comprehend and understand the nature of the transaction'" (Adsit v Wal-Mart Stores, Inc., 79 AD3d 1168, 1169 [2010] [internal citation omitted], quoting Sears v First Pioneer Farm Credit, ACA, 46 AD3d 1282, 1284 [2007]; see Zurenda v Zurenda, 85 AD3d 1283, 1284 [2011]). The incapacity must be shown to exist at the time the pertinent document was executed (see Adsit v Wal-Mart Stores, Inc., 79 AD3d at 1169). Regarding the statute of limitations issue, the toll for "insanity" provided by CPLR 208 is narrowly interpreted, the concept of insanity is "equated with unsoundness of mind" (Eisenbach v Metropolitan Transp. Auth., 62 NY2d 973, 975 [1984]) and encompasses "only those individuals who are unable to protect their legal rights because of an over-all inability to function in society" (McCarthy v Volkswagen of Am., 55 NY2d 543, 548 [1982]). The mental incapacity must exist at or be caused by the accident and continue during the relevant time (see Rosenfeld v Schlecker, 5 AD3d 461, 461-462 [2004]; Seppala v Meadowbrook Care Ctr., 292 AD2d 368, 369 [2002]). Where, as here, we are reviewing a determination following a nonjury hearing, we have "broad authority . . . to independently weigh the evidence and render a determination warranted by the record, [but] we will defer to the trial court's assessment of

credibility issues" (<u>Matter of Curtis</u>, 83 AD3d 1182, 1183 [2011] [internal quotation marks, brackets and citations omitted]; <u>see</u> <u>Matter of Moak</u>, 92 AD3d 1040, 1043 [2012], <u>lv denied</u> 19 NY3d 812 [2012]; <u>Feiden v Feiden</u>, 151 AD2d 889, 891 [1989]).

Evidence in the record established that, following the accident, plaintiff was hospitalized in a coma and remained in such condition for about two weeks.  After approximately a month in the hospital, he was transferred to a facility for head injury rehabilitation.  He remained there until late October 1991 and discharged himself against medical advice from that facility, where records indicate that he had severe impairments.  Although he had not been hospitalized before the 1991 accident for mental health problems, following the accident and through 1999, plaintiff, as detailed by Supreme Court, had some 20 psychiatric-related hospitalizations.  The voluminous records reflect ongoing significant problems, as well as repeated bizarre conduct by plaintiff ranging from, among other things, believing that $400 million was going to be delivered to him to stating that the FBI and CIA were after him.  Plaintiff also had a series of arrests during the relevant years when not hospitalized.

Plaintiff presented testimony from two experts, Stephen Price and Harry Camperlengo, both board certified psychiatrists who had examined plaintiff and reviewed his extensive medical records.  Price opined that, when plaintiff left the rehabilitation facility in October 1991 against doctors' advice, he was unable to function at a level to understand and protect his legal rights.  Price further stated that thereafter, and for a period that extended to 1999, plaintiff's condition continued to deteriorate.  Camperlengo explained that plaintiff suffered a severe brain injury.  Based upon his evaluation of plaintiff and review of plaintiff's records, Camperlengo opined that, during the periods when plaintiff was not in a hospital, mental health clinic or jail, he would not have been able to protect his legal rights or function in society.

Defendant presented evidence that conflicted with plaintiff's proof, including, among other things, expert testimony from licensed psychologist Robert McCaffrey.  McCaffrey attributed plaintiff's declining condition to chronic alcoholism

rather than his traumatic brain injury. Although McCaffrey acknowledged that during some relevant times plaintiff was incapacitated, he opined that, for much of the pertinent period, plaintiff was able to sufficiently function.

Conflicting proof was presented on key issues and Supreme Court credited the evidence supportive of plaintiff's position. We discern no reason to disregard those credibility determinations. Accepting such determinations, there is sufficient proof in the record to support Supreme Court's findings that plaintiff satisfied his burden of proving that he lacked capacity to execute the release in November 1991 and that he suffered an ongoing mental disability sufficient to toll the statute of limitations during the relevant period. Accordingly, we will not disturb Supreme Court's ruling.

Finally, defendant also asserts as grounds for reversal the alleged evidentiary errors that were the subject of the previously dismissed appeal (121 AD3d 1308). Regarding defendant's motion to limit certain expert proof, "[i]t is axiomatic that 'Supreme Court is vested with broad discretion in addressing expert disclosure issues'" (Mary Imogene Bassett Hosp. v Cannon Design, Inc., 97 AD3d 1030, 1031 [2012], quoting Gross v Sandow, 5 AD3d 901, 902 [2004], lv dismissed and denied 3 NY3d 735 [2004]), and we are unpersuaded that Supreme Court abused its discretion. Further, as for defendant's argument about the admission of plaintiff's Social Security Administration records, we do not find reversible error under the circumstances of this hearing.

Garry, Egan Jr. and Rose, JJ., concur.

ORDERED that the order and amended order are affirmed, with costs.

ENTER:

Robert D. Mayberger
Clerk of the Court